# EXHIBIT 1



Search for Cases by: Select Search Method...

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print      GrantedPublicAccess   Logoff P_SSW0RD50

## 22SL-CC01953 - THE CRAWFORD GROUP, INC. ET AL V STEPHEN B SUMNER (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending   ○ Ascending

Display Options: All Entries

---

**04/01/2022** ☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
    **Filed By:** JASON SCOTT MEYER
    **On Behalf Of:** ENTERPRISE HOLDINGS, INC.

☐ **Motion Hearing Scheduled**
    **Scheduled For:** 04/04/2022; 9:00 AM ; BRIAN H MAY; St Louis County

**03/31/2022** ☐ **Entry of Appearance Filed**

Entry of Appearance Jason Meyer; Electronic Filing Certificate of Service.
    **Filed By:** JASON SCOTT MEYER
    **On Behalf Of:** THE CRAWFORD GROUP, INC., ENTERPRISE HOLDINGS, INC.

**03/30/2022** ☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-283, for SUMNER, STEPHEN BOYD. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Filing Info Sheet eFiling**
    **Filed By:** MARK S DEIERMANN

☐ **Note to Clerk eFiling**
    **Filed By:** MARK S DEIERMANN

☐ **Order**

Order Granting Motion to Seal.
    **Filed By:** MARK S DEIERMANN
    **On Behalf Of:** THE CRAWFORD GROUP, INC., ENTERPRISE HOLDINGS, INC.

☐ **Motion Special Process Server**

Request for Appointment of Process Server.
    **Filed By:** MARK S DEIERMANN

☐ **Suggestions in Support**

Memorandum in Support of Motion for Temporary Restraining Order.
    **Filed By:** MARK S DEIERMANN

☐ **Mot for Temp Restraining Order**

Motion for Temporary Restraining Order; Exhibit A - Proposed Order.
    **Filed By:** MARK S DEIERMANN

☐ **Pet Filed in Circuit Ct**

Verified Petition; Exhibit A UNDER SEAL; Exhibit B; Exhibit C.
    **Filed By:** MARK S DEIERMANN

Case: 4:22-cv-00390   Doc. #:   1-1   Filed: 04/04/22   Page: 3 of 81 PageID #: 8

☐ **Judge Assigned**

DIV 1

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
### STATE OF MISSOURI

| | | |
|---|---|---|
| THE CRAWFORD GROUP, INC. and ENTERPRISE HOLDINGS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Cause No. |
| v. | ) ) | Division No. |
| STEPHEN BOYD SUMNER, | ) ) | |
| Defendant. | ) ) | |

### VERIFIED PETITION FOR INJUNCTIVE AND OTHER RELIEF

COME NOW Plaintiffs The Crawford Group, Inc. ("Crawford") and Enterprise Holdings, Inc. ("EHI," and EHI collectively with its subsidiaries, "Enterprise Holdings"), and for their Verified Petition against Defendant Stephen Boyd Sumner ("Sumner" or "Defendant"), state as follows:

### INTRODUCTION

1.     This is an action by Plaintiffs against a former high level executive, Stephen Boyd Sumner, to enforce a Noncompetition and Nonsolicitation Agreement and Release (the "Noncompetition Agreement," a copy of which is attached as Exhibit A hereto and incorporated herein) signed by Sumner in exchange for significant compensation from Enterprise Holdings, and which contains, *inter alia*, covenants not to compete and not to use or disclose confidential Enterprise Holdings information.

2.     Enterprise Holdings' businesses include the car rental business.  In connection with his resignation from Enterprise Holdings, Sumner informed Enterprise Holdings that he was going to work for Envision Motors Management, LLC ("Envision Motors"), a company engaged in the buying and selling of new and used vehicles as its Vice President/General Manager.  With that

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

understanding, Enterprise Holdings agreed to a limited exception to Sumner's non-compete obligations.  Enterprise Holdings never agreed that Sumner could engage in the car rental business; in fact, it was made very clear that he could not do so, and he knew and agreed he could not do so.

3.      Enterprise Holdings has recently learned that Envision Motors is expanding into the car rental business.  Sumner has stated that Envision Motors has started a division under the name "Exec Rent a Car," and he has acknowledged that he has been involved with the same. Enterprise Holdings has also learned that a new entity, Envision Rent-A-Car, LLC, has been created in order to engage in the car rental business.  Sumner has clearly violated his Noncompetition Agreement, which prohibits him from, among other things, being engaged in any business "competitive with any of Enterprise Holding's current business" including but not limited to "automotive, van and truck leasing; [and] automotive, van and truck rental . . . ."

4.      As a result, Plaintiffs bring this action seeking the injunctive relief necessary to prevent Sumner from breaching his contractual obligations, as well as damages to compensate Plaintiffs for the damages they have already incurred.

## PARTIES, JURISDICTION AND VENUE

5.      The Crawford Group, Inc. is a Missouri corporation with its principal place of business at 600 Corporate Park Dr., St. Louis, Missouri, 63105.

6.      Enterprise Holdings, Inc. is a Missouri corporation with its principal place of business at 600 Corporate Park Dr., St. Louis, Missouri, 63105.  Enterprise Holdings, Inc. is a wholly-owned subsidiary of The Crawford Group, Inc.

7.      Stephen Boyd Sumner is an individual who resides in Coronado, California.  At the time he signed his Noncompetition Agreement in connection with his resignation, he resided in and had been working for Enterprise Holdings out of Vancouver, British Columbia, Canada.

2

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

8.      This Court has subject matter jurisdiction pursuant to R.S.Mo. § 478.070.

9.      The Court has personal jurisdiction over Sumner under Missouri's long arm statute, R.S.Mo. § 506.500, and because Sumner voluntarily submitted to the jurisdiction of this Court under the Noncompetition Agreement.  Among other things, Sumner expressly acknowledged that the Noncompetition Agreement "was negotiated and executed in St. Louis County, Missouri"; Sumner traveled to St. Louis County, Missouri for training, meetings, and to conduct other business at Enterprise Holdings' offices; and Sumner represented to Enterprise Holdings in St. Louis County, Missouri that he would be working for Envision Motors in a role that did not include car rentals.

10.      Venue is appropriate in St. Louis County under R.S.Mo. §  508.010 because Plaintiffs' principal place of business and registered agent are located in St. Louis County, Missouri, because Plaintiffs have and will suffer injury from Sumner's conduct principally in St. Louis County, and because Sumner voluntarily agreed that venue is proper in this Court under the Noncompetition Agreement.  Sumner acknowledged, inter alia, "that he is a sophisticated and knowledgeable businessman, and that he fully and freely bargained for and agreed to the selection of such forum . . . ."

## **GENERAL ALLEGATIONS**

### **Enterprise and its Business**

11.      Enterprise Holdings includes more than 60 operating subsidiaries worldwide. Enterprise Holdings is in the business of (among other things) renting vehicles.

12.      Enterprise Holdings' operating subsidiaries, among other things, rent cars under the Alamo Rent-A-Car, Enterprise Rent-A-Car, and National Car Rental brands.  These subsidiaries operate under the direction of a General Manager, the functional head of operations for each regional subsidiary and a highly compensated executive.  The General Managers are involved in

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

myriad managerial and strategic decisions, including where and when to open branch locations, which and how many vehicles to operate at the branches, which and how many employees to hire, what hours the branches will operate, and whether and how to expand or contract its business, including by opening new locations or new lines of business, such as car sales or truck rental.

13.     The vehicle rental and sale business is a services industry.  It is highly competitive, and a company's competitive advantage is substantially dependent upon its ability to obtain, maintain and protect business and client relationships and goodwill and confidential, competitively-valuable and trade secret information.

14.     Enterprise Holdings expends substantial time and effort in developing business relationships and goodwill with its vendors, strategic partners, clients and prospective clients. Enterprise Holdings' clients include many insurance partners, corporate clients as well as retail, leisure renters.  Enterprise Holdings' vendors, strategic partners, and customers are often nationwide and/or worldwide, and not limited to a single region.

15.     Enterprise Holdings has also developed and compiled invaluable confidential, competitively-valuable and trade secret information to support its competitive position, including confidential information regarding business strategies (*e.g.*, what markets to target, what customers are most likely to use rental services in those markets, where to locate facilities and market in those markets, etc.); fleet management (*e.g.*, how many vehicles to maintain to optimize utilization, what mix of vehicles to acquire and in what markets, when to acquire, sell, or reduce vehicles in a fleet, etc.); strategic plans regarding, for example, product offerings, marketing, how and when to target certain corporate clients; contacts and contracts with key vendors and strategic partners; proprietary employee training programs and methods; and other similar confidential and competitively-valuable information (collectively, the "Confidential Information").

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

16.     Enterprise Holdings employs individuals such as the Sumner to develop, solidify and enhance its relationships and goodwill with its clients and prospective clients as well as its vendors and strategic partners.  Enterprise Holdings also allows its employees to access and use its Confidential Information to act in furtherance of its interests, and Sumner was very familiar with and used such Confidential Information.

### Sumner's Employment with Enterprise

17.     Stephen Boyd Sumner began working for Enterprise Holdings in 1996, eventually becoming Vice President/General Manager for Enterprise Rent-a-Car Canada Company in 2017, and working in Vancouver, Canada.  As Vice President/General Manager, Sumner was the top executive for the Enterprise Holdings' operating subsidiary in Vancouver and responsible for all aspects of the business there.

18.     Sumner worked in other high-level positions for Enterprise Holdings for over ten years, including, among others, Regional Vice President-Rental in Phoenix, Arizona and Regional Vice President in Los Angeles, California.

19.     During his employment, Sumner was very well compensated; in the four calendar years prior to his resignation, Sumner averaged more than one million dollars ($1,000,000) in annual compensation.

20.     During his employment, Sumner was paid to (among other things) develop, solidify, enhance and expand upon Enterprise Holdings' goodwill for and on behalf of Enterprise Holdings.  Enterprise Holdings also paid for business expenses to help develop, maintain, solidify and expand vendor, strategic business partner, and client relationships and goodwill for and on behalf of Enterprise Holdings.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

21.     During his employment, Sumner was provided significant confidential, competitively-valuable and trade secret information to help him develop, maintain, solidify and expand vendor, strategic partner and customer relationships and goodwill for and on behalf of Enterprise Holdings, and to grow and develop Enterprise Holdings' business.  This confidential information included, e.g., business strategies, fleet management analyses, metrics and methodologies; strategic plans regarding product offerings and marketing, contacts and contracts with key vendors and strategic partners, and proprietary employee training programs and methods, as further described above.

22.     This information was developed and maintained by Enterprise Holdings and provided to Sumner, including during company calls, meetings, and in-person training programs in St. Louis County, Missouri and other Enterprise Holdings' locations.

### Sumner's Noncompetition Agreement

23.     Sumner voluntarily resigned his employment effective August 31, 2021.

24.     In connection with his resignation, and to protect Enterprise Holdings' Confidential Information and goodwill, Sumner and Plaintiffs entered into the Noncompetition Agreement (attached as Exhibit A hereto).  Under the Noncompetition Agreement, EHI agreed to pay Sumner a very generous sum over a period of five years (*i.e.*, through September 30, 2026) in exchange for, among other things, Sumner's abiding by certain noncompetition and nonsolicitation provisions.

25.     Paragraph 4 of the Noncompetition Agreement, titled "Non-Competition," provides that "Sumner shall not, from the date of execution of this Agreement through and including August 31, 2026 [*i.e.*, five years], directly or indirectly, whether as a partner, investor, employee, consultant, owner, creditor, shareholder or otherwise, promote, participate in or engage in any

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

activity, or in any other business, which is competitive with any of Enterprise Holdings' current businesses (as described below) . . . in any city, county, parish, state or province of the United States, Canada or any country where Enterprise Holdings (including any corporation or affiliate or associated business entity included (above) in the definition of "Enterprise Holdings") had existing operations or conducted business as of Separation Date . . . ."  Exhibit A, ¶ 4(a).

26.     In Paragraph 4(a), Sumner specifically acknowledged "that Enterprise Holdings is engaged in each of the following businesses, among others:  automotive, van and truck leasing; automotive, van and truck rental; new or used automotive, van and truck sales; automotive, van and truck fleet management; rideshare and/or vanpool; providing and/or facilitating special services to automotive, van and truck fleet owners, lessors, insurance industry adjustors and/or agents, including, but not limited to, those services provided under the trade name "Enterprise Claims Connection"; any and all ARMS related applications, vanpool services; and automotive, van and truck rental reservation centers."  *Id.*

27.     Sumner further specifically acknowledged that:

Enterprise Holdings' businesses reach to the full extent of this geographic restriction and it would be impossible to craft a non-competition provision with a narrower geographical limitation that would adequately protect Enterprise Holdings' legitimate interests.  Enterprise Holdings does not operate as a traditional "bricks and mortar" business with operations in a limited geographic area.  Rather, Enterprise Holdings' business is such that personal long term relationships between a customer and Enterprise Holdings develop through contacts with individual employees and are crucial to the business, and business is primarily conducted by telephone or electronic communications that can be conducted from anywhere.

*Id.*, ¶ 4(b).

28.     In Paragraph 4(d) of his Noncompetition Agreement, Sumner agreed that he "**shall immediately** inform and disclose to Enterprise any attempt by any person to involve Sumner, in

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

any manner, in any activity that is competitive with any business of Enterprise Holdings." *Id.*, ¶ 4(d) (emphasis added).

29.    Sumner further agreed to "hold in strictest confidence and not disclose to any person, firm, corporation, partnership or other entity, without the express prior written authorization of Enterprise, any confidential or proprietary information relating to any of the businesses of Enterprise Holdings." *Id.*, ¶ 5.  Paragraph 5 defines confidential or proprietary information as including (but not limited to):

> current, previous and planned technical information; intellectual property; business and marketing plans and procedures; new product/service concepts; purchasing agreements; pay; compensation policies and practices; rates; attorney-client communications; strategies; forecasts; customer and/or supplier lists and information; other information concerning the products, services, promotions, development, financing, expansion plans, business policies and practices of Enterprise Holdings; information pertaining to proprietary, technology-based systems, any confidential or proprietary data contained within such systems, and any formulas, processes, or methods embodied by such systems, such as, without limitation, ARMS, ABS,  ECARS, EDGE, Odyssey and National Reservations systems; and other forms of information considered by Employer to be confidential, proprietary or in the nature of trade secrets ("Confidential Information") . . . .

*Id.*

30.    In Paragraph 5(b) of his Noncompetition Agreement, Sumner acknowledged that:

> [B]y virtue of his employment with Enterprise, he has had and may have substantial access to confidential client, vendor and/or supplier lists and/or confidential customer contacts.  Sumner acknowledges that some clients, vendors, suppliers and/or customers have had regular or repeated dealings with Enterprise Holdings which result in systematic or frequent purchases, purchase discounts or other business dealings, such that Enterprise Holdings receives habitual or consecutive business relations with them.  Sumner acknowledges that the client, vendor, supplier and/or customer lists and contacts are not matters of public or general knowledge, that such client, vendor, supplier and/or customer lists, and client, vendor, supplier and/or customer contacts have been developed by Enterprise Holdings and maintained by Enterprise Holdings at substantial time and expense, that such client, vendor, supplier and/or customer contacts are extremely valuable to Enterprise Holdings, and that such client, vendor, supplier and/or customer lists and such client, vendor, supplier and/or customer contacts could not be easily replicated.  Sumner hereby irrevocably stipulates that the confidential client,

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

vendor, supplier and/or customer contacts and client, vendor, supplier and/or customer lists described in this paragraph, and the Confidential Information, constitute trade secrets for purposes of applicable law.

31.     Sumner agreed not to take, disclose, misappropriate, recreate, or misuse any of Enterprise Holding's Confidential Information or trade secrets.  *Id.*, ¶ 5(c).

32.     Under Paragraph 6 of the Noncompetition Agreement, Sumner agreed that he "shall not, from the date of execution of this Agreement through and including August 31, 2026, directly or through others divert or attempt to divert current or former customers of Enterprise Holdings, to terminate, modify or not renew their business relationship with Enterprise Holdings."  *Id.*, ¶ 6(b).

33.     Sumner explicitly acknowledged that "the extent of his agreements not to compete with Enterprise Holdings is reasonable in terms of time, scope of activities, and geography, given his status and taking into consideration the substantial economic payments and benefits for him specified in this Agreement, to which Sumner is not otherwise entitled except for this Agreement." *Id.*, ¶ 7(a).

34.     Sumner further acknowledged that a breach of his obligations in Paragraphs 4, 5 and 6 of the Noncompetition Agreement "**will** result in irreparable harm for which Enterprise Holdings cannot reasonably or adequately be compensated in damages in an action at law," and that accordingly, "in addition to each and every other remedy provided by law or equity, Enterprise Holdings shall have the right to obtain injunctive relief (including, but not limited to, specific performance, a temporary restraining order and a preliminary, permanent or mandatory injunction), without any requirement to post a bond, against any breach of this Agreement by Sumner." *Id.*, ¶ 7(b) (emphasis added).

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**Sumner's Departure from Enterprise and Violation of His Noncompetition Agreement**

35.     Effective August 31, 2021, Sumner voluntarily resigned from Enterprise Holdings. He had been with Enterprise Holdings for more than 25 years.

36.     In connection with his departure, Sumner negotiated and entered into the Noncompetition Agreement.   In exchange for certain restrictive covenants (among other obligations reflected in the Noncompetition Agreement), Enterprise Holdings agreed to pay Sumner, over a five-year period, a significant sum as reflected in Exhibit A.  *See* Exhibit A, ¶ 2.

37.     Sumner entered into an additional Release agreement with Enterprise Rent-A-Car Canada Company in connection with his resignation.  Together the Noncompetition Agreement and Release provide for Sumner to receive more than one million dollars ($1,000,000) from Enterprise Holdings in connection with his departure.

38.     At the time of the negotiations, Sumner informed Enterprise that he intended to work for Envision Motors.  Sumner represented that Envision Motors was engaged in the business of selling new and used cars, and that he would be its General Manager, overseeing the dealer business (*i.e.*, buying and selling cars).  This is consistent with Envision Motors' corporate filings, which identify it as an "Automotive dealership."  *See* Exhibit B.  Sumner specifically represented that he would not be renting vehicles to retail customers.

39.     As reflected in the Noncompetition Agreement, Sumner is prohibited from competing with Enterprise Holdings, including in the business of buying and selling cars. However, based on Sumner's representations that Envision Motors was not also engaged in the rental business and Sumner would not be engaged in the car rental business for Envision Motors, Enterprise Holdings agreed as an exception to his restrictive covenants that Sumner could do this

10

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

work for Envision Motors without violating his Noncompetition Agreement.  *See* Exhibit A, ¶ 4(a).

40.     Sumner further agreed to "immediately inform and disclose to Enterprise any attempt by any person to involve Sumner, in any manner, in any activity that is competitive with any business of Enterprise Holdings."  *Id.*, ¶ 4(d).

41.     Despite these representations, the clear obligations in his Noncompetition Agreement, and the significant compensation being paid to Sumner (over half of which he has already received pursuant to the terms of the Noncompetition Agreement), Enterprise Holdings has recently learned that Sumner, in his work for Envision Motors, has been planning and assisting in establishing a car rental business that would compete directly with Enterprise Holdings in clear violation of his Noncompetition Agreement.

42.     Sumner has been working for Envision Motors to expand Envision Motors' business to include the retail rental market in Southern California as a way to better utilize Envision Motor's loaner fleet.  Enterprise Holdings has locations throughout the same region.

43.     Among other things, Sumner has hired a manager and assistant manager from Hertz, further evidencing his and Envision Motor's plans to compete in the retail rental business.

44.     A new entity called "Envision Rent-a-Car, LLC" ("Envision Rental") was incorporated on November 22, 2021.  Envision Rental's sole member is identified as Envision Motors, and its business is stated as "Rental Cars."  *See* Exhibit C.

45.     Sumner never told Enterprise Holdings before or during the negotiations of the Noncompete Agreement that he and/or Envision Motors had any plans or intentions to expand into the retail rental business.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

46.     Sumner failed to disclose to Enterprise Holdings that he would be involved in Envision Motors' retail rental business despite his obligation to "immediately inform and disclose" Enterprise Holdings of any attempts by anyone to involve Sumner in any business competitive with Enterprise Holdings.

## COUNT I: BREACH OF CONTRACT

47.     Paragraphs 1-46 of this Verified Petition are incorporated by reference as if fully set forth herein.

48.     Sumner is bound by the terms of the Noncompetition Agreement, which is valid and enforceable.

49.     As described more fully above, pursuant to the Noncompetition Agreement, Sumner agreed to abide by, among others, restrictive covenants not to compete with Enterprise Holdings for five years after his resignation from Enterprise Holdings.

50.     Sumner has breached his post-employment obligations, by, at a minimum, (a) failing to inform Enterprise Holdings that Envision Motors was expanding into the car rental business, that Envision Motors involved Sumner in such business, and that Sumner is in fact involved in such business; and (b) engaging in a business directly competitive with Enterprise Holdings, through Envision Motors and/or Envision Rental, in violation of his noncompetition obligations.  The full scope and extent of Sumner's breaches are not yet known.

51.     The restrictive covenants contained in the Noncompetition Agreement are reasonable, necessary and enforceable to protect Enterprise Holdings' legitimate business interests.

52.     Sumner acknowledged in the Noncompetition Agreement that his restrictions are reasonably necessary to protect Enterprise Holdings' interests.  *See* Exhibit A, ¶ 7(a).

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

53.     Sumner acknowledged and agreed that a violation of the covenants, promises and agreements described above would result in irreparable harm to Enterprise Holdings and consented to the issuance of an injunction, without any requirement to post a bond, prohibiting conduct in violation of the Noncompetition Agreement. *Id.*, ¶ 7(b).

54.     Sumner's breaches of his contractual obligations under his Noncompetition Agreement have caused, are continuing and will continue to cause Enterprise Holdings to suffer irreparable harm and damage, including loss of goodwill and loss of competitive advantage. Monetary damages alone will not fully or adequately compensate Enterprise Holdings.

55.     Sumner's breaches of his Noncompetition Agreement have caused, are continuing and will continue to cause Enterprise Holdings to incur substantial monetary damages, including, but not limited to, attorneys' fees and costs, and in the absence of further injunctive relief, will cause substantial loss of income and lost profits.

56.     Under Paragraph 9 of the Noncompetition Agreement, Plaintiffs are entitled to recover their costs and reasonable attorneys' fees expended in seeking judicial and equitable relief for Sumner's breaches of the agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendant Stephen Boyd Sumner, and further request that the Court:

A.     Temporarily, preliminarily and permanently enjoin, restrain and prohibit Sumner, and all of his agents, servants, representatives, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly:

    1.    violating the terms of the Noncompetition Agreement, including by engaging in activities that directly compete with the business of Enterprise Holdings, including by providing any assistance or services to Envision Rent-a-Car, LLC;

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

2.      working for or assisting Envision Motors, which is now a directly competitive company of Enterprise Holdings in the retail car rental business;

3.      using, disclosing, copying, communicating, or distributing any of Plaintiffs' trade secret information or other Confidential Information; and

4.      avoiding or attempting to avoid providing discovery in this litigation by purging, destroying, altering, modifying or concealing any of Plaintiffs' trade secret or other Confidential Information, whether in original, copied, computerized, handwritten or any other form;

B.      Enter an order requiring Sumner to immediately return to Plaintiffs any and all documents containing any trade secret or other Confidential Information of Plaintiffs or pertaining to Plaintiffs' business, regardless of the form or medium in which it/they is/are stored or preserved (including, but not limited to, on a computer, thumb drive, flash drive, DVD or CD, "smart" phone, iPad, etc.), and whether in original, copied, computerized, handwritten or any other form;

C.      Award Plaintiffs damages under the Noncompetition Agreement in accordance with its terms and as are fair, reasonable, and recoverable under applicable law based upon the evidence adduced at trial, including without limitation, compensatory damages, plus interest, fees, and costs;

D.      Award Plaintiffs such other and further relief as this Court deems just and proper.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Dated:  March 30, 2022

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By:/s/  *Mark S. Deiermann*
    Mark S. Deiermann, #31521
    Jason S. Meyer, #64030
    Ellen E. Whitehorn, #71226
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    Telephone: (314) 259-2000
    Facsimile:  (314) 259-2020
    msdeiermann@bclplaw.com
    jason.meyer@bclplaw.com
    ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

## VERIFICATION

I, _William Withington_ being of lawful age, hereby declare under penalty of perjury, as follows:

1.    I am _Senior Vice President_ of Enterprise Holdings, Inc.

2.    The facts alleged in the Verified Petition are based on matters known personally to me and/or on information provided to me by others within Enterprise Holdings, Inc., and are true and correct to the best of my knowledge, information and belief.

_____
NAME

_3/29/22_____
DATE

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

THE CRAWFORD GROUP, INC. and )
ENTERPRISE HOLDINGS, INC., )
                               )
                Plaintiffs, )    Cause No.
                               )
v.                               )    Division No.
                               )
STEPHEN BOYD SUMNER, )
                               )
               Defendant. )
                               )

**MOTION OF PLAINTIFF ENTERPRISE HOLDINGS, INC.**
**FOR TEMPORARY RESTRAINING ORDER**

COMES NOW Plaintiff Enterprise Holdings, Inc. ("EHI," and collectively with its subsidiaries, "Enterprise Holdings") moves this Court, pursuant to Rule 92.02 of the Missouri Supreme Court Rules, for a temporary restraining order ("TRO") to enjoin Defendant Stephen Boyd Sumner ("Defendant" or "Sumner") from violating the restrictive covenants in his Noncompetition and Nonsolicitation Agreement and Release that is attached as Exhibit A to the Verified Petition (the "Noncompetition Agreement"). The Noncompete Agreement is valid, reasonable and enforceable, and the relief sought herein is very narrow. A proposed Temporary Restraining Order is attached hereto as Exhibit A.

In support of its Motion, EHI relies upon and incorporates by reference herein the allegations and arguments set forth in the Verified Petition for Injunctive and Other Relief ("Verified Petition") and in the Memorandum in Support of this Motion, filed herewith, and further states as follows:

1.       Enterprise Holdings includes over 60 operating subsidiaries worldwide engaged in the business of (among other things) renting vehicles.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

2.      Sumner worked for Enterprise Holdings for more than 25 years, including most recently as a high-level executive as Vice President/General Manager for Enterprise Rent-a-Car Canada Company out of Vancouver.

3.      Defendant voluntarily resigned from his position with Enterprise Holdings effective August 31, 2021.

4.      In connection with his resignation, and to protect Enterprise Holdings' Confidential Information and goodwill, Sumner and Plaintiffs entered into the Noncompetition Agreement.

5.      Under the Noncompetition Agreement, Enterprise Holdings agreed to pay Sumner a very generous sum over a period of five years (*i.e.*, through September 30, 2026) in exchange for, among other things, Sumner's abiding by certain noncompetition and nonsolicitation provisions.

6.      Section 4 of the Noncompetition Agreement provides that "Sumner shall not, from the date of execution of this Agreement through and including August 31, 2026 [*i.e.*, five years], directly or indirectly, whether as a partner, investor, employee, consultant, owner, creditor, shareholder or otherwise, promote, participate in or engage in any activity, or in any other business, which is competitive with any of Enterprise Holdings' current businesses (as described below) . . . in any city, county, parish, state or province of the United States, Canada or any country where Enterprise Holdings (including any corporation or affiliate or associated business entity included (above) in the definition of "Enterprise Holdings") had existing operations or conducted business as of Separation Date . . . ."  Exhibit A to Verified Pet., ¶ 4(a).

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

7.      In Section 4(a), Sumner specifically acknowledged that Enterprise Holdings is engaged in various automotive , van, and truck businesses, including, among others, "automotive, van and truck leasing [and] automotive, van and truck rental."  *Id.*

8.      At the time of the negotiations, Sumner informed Enterprise that he intended to work for Envision Motors, which he represented was engaged in the business of selling new and used cars, and Sumner specifically represented that he would not be renting vehicles to retail customers.

9.      Based on Sumner's representations, Enterprise Holdings agreed that because Envision Motors was not engaged in the rental business and Sumner would not be engaged in the car rental business for Envision Motors, Sumner could work for Envision Motors without violating his Noncompetition Agreement.

10.     Enterprise Holdings has recently learned that Sumner, in his work for Envision Motors, has been planning and assisting in establishing a car rental business that would compete directly with Enterprise Holdings in clear violation of his Noncompetition Agreement.

11.     Sumner never told Enterprise Holdings before or during the negotiations of the Noncompete Agreement that he and/or Envision Motors had any plans or intentions to expand into the retail rental business, and failed to disclose to Enterprise Holdings that he would be involved in Envision Motors' retail rental business despite his obligation to immediately disclose to Enterprise Holdings any attempts by anyone to involve him in any business competitive with Enterprise Holdings.

12.     The Noncompete Agreement is governed by Missouri law, where EHI is headquartered and has its principal place of business.  Under Missouri law regarding restrictive covenants, injunctive relief preventing Sumner from violating the Agreement is proper.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

13.     EHI is likely to succeed on the merits of its claims for injunctive relief enforceing Defendant's restrictive covenants.  Sumner was provided valuable confidential and competitively-valuable (*i.e.*, trade secret) information while he was with Enterprise Holdings, including confidential information regarding:  business strategies; fleet management; strategic plans regarding, for example, product offerings, marketing, how and when to target certain corporate clients; contacts and contracts with key vendors and strategic partners; proprietary employee training programs and methods; and other similar information.  Sumner's familiarity with and exploitation of Enterprise Holdings' confidential information will allow him and Envision Motors to get an improper "head start" in starting their car rental business and to compete unfairly with Enterprise.

14.     The protections afforded by the Noncompetition Agreement and the limited relief requested in this Motion are reasonable and necessary in light of*, inter alia*, EHI's legitimate business interests relating to Sumner's employment.  *See, e.g., Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841 (Mo. 2012) ("employers have a legitimate interest in engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment").  Missouri courts have enforced agreements with similar time and geographic restrictions.  *See, e.g.*, *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo. App. 1993) (ten-year nationwide noncompete enforced for five-year period against former executive); *Express Scripts, Inc. v. Lavin*, No. 17CV01423 HEA, 2017 WL 2903205, at *1 (E.D. Mo. July 7, 2017) (enforcing nationwide restriction).  Moreover, the Noncompetition Agreement explicitly carved out the opportunity for Sumner to work at Envision Motors when it was limited to the sale of new and used vehicles, and for the entirety of the five-year restriction, Sumner was

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

to be paid significant compensation in exchange for his continued compliance with the restrictive covenants.

15.    EHI will also be subject to irreparable harm if injunctive relief is not issued. The loss of fair competition that results from the breach of a non-competition or non-solicitation agreement by itself is likely to cause irreparable harm.  *See, e.g., Long v. Huffman*, 557 S.W.2d 911, 914 (Mo. App. 1977)**.**  In helping Envision Motors with its competing business, Sumner is in a position to use his intimate knowledge of Enterprise Holdings' confidential information and business strategies, in addition to the goodwill and confidential information he can exploit in connection with his and Envision Motors' dealings with vendors, strategic partners, and customers as a result of his twenty-five years with Enterprise Holdings.

16.    The balance of the equities and public interest also strongly favor injunctive relief.  EHI is simply asking that Sumner be required to live up to the terms of the Noncompetition Agreement he willingly and knowingly signed.  He has already received significant compensation under his Noncompetition Agreement, having received six payments from September 30, 2021 through February 28, 2022, totaling several hundred thousand dollars. There is no undue hardship or inequity in requiring him to honor his contractual promises after he has willingly accepted and reaped the substantial financial rewards already paid under the contract.

17.    The public interest also supports issuance of a temporary restraining order prohibiting Defendant from violating his covenants.  Missouri has a policy in favor of enforcing contracts, including reasonable restrictive covenants which protect the legitimate business interests of Missouri-based companies such as EHI.  *See, e.g., N.I.S. Corp. v. Swindle*, 724 F.2d

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

707, 710 (8th Cir. 1984) ("If these noncompete agreements are valid, the public interest calls for their enforcement.").

WHEREFORE, for the foregoing reasons, and those set forth in the Verified Petition and in its Memorandum in Support of this Motion, EHI requests that this Court:

1.   enter a temporary restraining order enjoining, restraining and prohibiting Sumner, and all of his agents, servants, representatives, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly:

   a.   working for or assisting Envision Motors, which is now a directly competitive company of Enterprise Holdings in the retail car rental business;

   b.   working for or assisting Envision Rent-a-Car, LLC;

   c.   using, disclosing, copying, communicating, or distributing any trade secret information or other Confidential Information as set forth in the Noncompetition Agreement; and

   d.   avoiding or attempting to avoid providing discovery in this litigation by purging, destroying, altering, modifying or concealing any of Plaintiffs' trade secret or other Confidential Information, whether in original, copied, computerized, handwritten or any other form; and

2.   grant Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 30, 2022

BRYAN CAVE LEIGHTON PAISNER LLP

By:/s/  *Mark S. Deiermann*
    Mark S. Deiermann, #31521
    Jason S. Meyer, #64030
    Ellen E. Whitehorn, #71226
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    Telephone: (314) 259-2000
    Facsimile:  (314) 259-2020
    msdeiermann@bclplaw.com
    jason.meyer@bclplaw.com
    ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of March, 2022, the foregoing was delivered for personal service upon the following:

Stephen Boyd Sumner
823 I. Ave.
Coronado, California 92118-2447


_____/s/ Mark S. Deiermann_____

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| THE CRAWFORD GROUP, INC. and ENTERPRISE HOLDINGS, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| STEPHEN BOYD SUMNER, | ) ) ) |
| Defendant. | ) ) |

Cause No.

Division No.

**<u>TEMPORARY RESTRAINING ORDER</u>**

The Court, after reviewing the Verified Petition for Injunctive and Other Relief (the "Verified Petition"), Motion for a Temporary Restraining Order, and Memorandum in Support of Motion for a Temporary Restraining Order (the "Supporting Memorandum"), and having heard the arguments of counsel, hereby finds and orders:

1. Plaintiff Enterprise Holdings, Inc.'s ("EHI," and collectively with its subsidiaries, "Enterprise Holdings") Motion for a Temporary Restraining Order is **GRANTED**.

2. As set forth in the Verified Petition, Defendant Stephen Boyd Sumner ("Sumner") was formerly employed for many years by Enterprise Holdings.

3. Upon resigning his employment, Sumner agreed to restrictive covenants in a Noncompetition and Nonsolicitation Agreement and Release (the "Noncompetition Agreement"), which is attached as Exhibit A to the Verified Petition.

4. After leaving his employment with Enterprise Holdings, Sumner has been planning and assisting his new employer, Envision Motors Management, LLC ("Envision Motors"), in establishing a car rental business that would compete directly with Enterprise Holdings in violation of his Noncompetition Agreement.

**EXHIBIT A**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

5.      EHI is subject to immediate and irreparable injury if Defendant is permitted to breach the Noncompetition Agreement.  Monetary relief will not fully or adequately compensate EHI for the injury which could be caused by Defendant's violation(s) of the Agreement.  EHI is likely to succeed on the merits of this action.

6.      For the reasons stated above and in the Verified Petition, Motion for a Temporary Restraining Order, and the Supporting Memorandum, Defendant, and all of his agents, servants, representatives, employees, attorneys, and those persons in active concert or participation with them, are temporarily restrained and prohibited from, directly or indirectly:

a.      working for or assisting Envision Motors, which is now a directly competitive company of Enterprise Holdings in the retail car rental business;

b.      working for or assisting Envision Rent-a-Car, LLC;

c.      using, disclosing, copying, communicating, or distributing any trade secret information or other Confidential Information as set forth in the Noncompetition Agreement; and

d.      avoiding or attempting to avoid providing discovery in this litigation by purging, destroying, altering, modifying or concealing any of Plaintiffs' trade secret or other Confidential Information, whether in original, copied, computerized, handwritten or any other form;

7.      Pursuant to Mo. Sup. Ct. R. 92.02(e), this Order shall be binding upon those persons in active concert or participation with Defendant who receive actual notice of the order by personal service or otherwise.

8.      Pursuant to Mo. Sup. Ct. R. 92.02(d), the Court orders that EHI provide a surety bond or deposit in the amount of $_____.

9.      This Temporary Restraining Order shall expire on _____ __, 2022, unless otherwise extended by this Court.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

     10.     The hearing on EHI's Motion for a Preliminary Injunction is set for

_____ o'clock __.m. on the _____ day of April __, 2022, in Division __ of the Circuit

Court of St. Louis County, Missouri.


So Ordered:    _____

Dated:   March __, 2022

Time:   _____o'clock _____.m.

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

THE CRAWFORD GROUP, INC. and )
ENTERPRISE HOLDINGS, INC., )
                                     )
                     Plaintiffs, )   Cause No.
                                     )
v.                                )   Division No.
                                     )
STEPHEN BOYD SUMNER, )
                                     )
                     Defendant. )
                                     )

**PLAINTIFF ENTERPRISE HOLDINGS, INC.'S MEMORANDUM IN**
**SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Enterprise Holdings, Inc. ("EHI," and collectively with its subsidiaries, "Enterprise Holdings") is seeking a temporary restraining order preventing Defendant Stephen Boyd Sumner ("Defendant" or "Sumner") from violating the terms of the restrictive covenants in a Noncompetition and Nonsolicitation Agreement and Release (the "Noncompetition Agreement") Sumner signed upon tendering his resignation from Enterprise Holdings.  Sumner worked in high-level positions within Enterprise Holdings for many years and had significant access to, and use of, confidential and competitively valuable information of Enterprise Holdings.  He was very well paid not only while employed, but has also been paid an additional significant sum specifically in exchange for his promise to abide by the Noncompetition Agreement.  In light of his high-level positions within Enterprise Holdings, the confidential, competitively-valuable information he possessed and with which he was very familiar, the business relationships and goodwill he developed at Enterprise Holdings' expense, and the lucrative compensation he is receiving in connection with his departure, the restrictive covenants in the Noncompetition Agreement are reasonable and enforceable.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

As set forth in the Verified Petition and Motion for a TRO, Defendant has already breached the Noncompetition Agreement by helping to launch a directly competitive car rental business for his new employer, Envision Motors.  Envision Motors already operates several established car dealerships around Southern California/Greater Los Angeles, and Sumner has been working to add car rental services to these establishments.  The Noncompetition Agreement expressly prohibits this exact conduct, and for good cause—Sumner has been well compensated in exchange for his agreement not to compete in large part because he has years of knowledge regarding Enterprise Holdings' confidential information that could assist a competitor in exactly this situation (*e.g.*, how and when to open new rental locations, how to staff such locations, how to acquire, service, and manage fleets for such locations, how to leverage partner, supplier and customer relationships, and more).  Sumner's disregard of his obligations under the Noncompetition Agreement will irreparably damage and harm Enterprise Holdings.  A temporary restraining order preserving the status quo and prohibiting Sumner from continuing to breach the Agreement by working for Envision Motors is needed to protect Enterprise Holdings from this irreparable harm and preserve its rights and interests under the Noncompetition Agreement.

## **BACKGROUND**

The facts of this case are more fully presented in Plaintiffs' Verified Petition for Injunctive and Other Relief (the "Verified Petition"), which is fully incorporated herein.

Enterprise Holdings includes more than 60 operating subsidiaries worldwide.  Verified Pet. ¶ 11.  Enterprise Holdings' operating subsidiaries, among other things, rent cars under the Alamo Rent-A-Car, Enterprise Rent-A-Car, and National Car Rental brands.  *Id.* at ¶ 12.  Sumner worked for Enterprise Holdings for more than twenty-five years, eventually becoming General Manager for Enterprise Rent-a-Car Canada Company.  *Id*. at ¶ 17.  As Vice President/General

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Manager, Sumner was the top executive for the Enterprise Holdings' operating subsidiary in Vancouver and responsible for all aspects of the business there. *Id*. at ¶ 17.  Sumner worked in additional high-level positions for Enterprise Holdings for the past ten years, including, among others, Regional Vice President-Rental in Phoenix, Arizona and Regional Vice President in Los Angeles, California. *Id*. at ¶ 18.

Enterprise Holdings' General Managers are the functional heads of operations for each regional subsidiary, and Sumner was highly compensated. *Id.* at ¶¶ 12, 18.  The General Managers—including Sumner—are involved in myriad managerial and strategic decisions, and EHI provides them with confidential and competitively valuable information through calls, meetings, and training, including information on where and when to open branch locations, which and how many vehicles to operate at the branches, which and how many employees to hire, what hours the branches will operate, and whether and how to expand or contract its business, including by opening new locations or new lines of business, such as car sales or truck rental. *Id.* at ¶¶ 12, 16.  This confidential, competitively-valuable information is useful not only in the General Manager's own territory but other territories as well.

During his employment, Sumner was provided significant confidential, competitively-valuable and trade secret information to help him develop, maintain, solidify and expand vendor, strategic partner and customer relationships and goodwill for and on behalf of Enterprise Holdings, and to grow and develop Enterprise Holdings' business. *Id.* at ¶ 21.  This confidential information included, e.g., business strategies; fleet management analyses, metrics and methodologies; strategic plans regarding product offerings and marketing; contacts and contracts with key vendors and strategic partners; and proprietary employee training programs and methods. *Id.*

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Sumner voluntarily resigned effective August 31, 2021.  *Id.* at ¶¶ 23, 35.  In connection with his resignation, Sumner and Plaintiffs entered into the Noncompetition Agreement, under which Enterprise Holdings agreed to pay Sumner a very generous sum over a five-year period in consideration for, among other things, Sumner's abiding by certain noncompetition and nonsolicitation provisions.  *Id.* at ¶¶ 24, 36; Ex. A to *id*.  Sumner negotiated and signed the Noncompetition Agreement and has already accepted the first six payments under the Agreement. *Id.* at ¶¶ 36, 41.  Sumner signed an additional Release with Enterprise Rent-A-Car Canada Company which, together with the Noncompetition Agreement, provides for Sumner to receive more than one million dollars ($1,000,000) from Enterprise Holdings in connection with his departure.  *Id.* at ¶ 37.

Section 4 of the Noncompetition Agreement prohibits Sumner, for a period of five years, from engaging in any activity or business "which is competitive with any of Enterprise Holdings' current businesses . . . in any city, county, parish, state or province of the United States, Canada or any country where Enterprise Holdings . . . had existing operations or conducted business as of Separation Date . . . ."  *Id.* at ¶ 25; Ex. A to *id.*, ¶ 4(a).  Sumner explicitly acknowledged the reasonableness of the time, scope, and geography of this restriction.  *Id.* at ¶ 33; Ex. A to *id.*, ¶ 7(a).

During the negotiations regarding the Noncompetition Agreement, Sumner informed Enterprise Holdings that he intended to work for Envision Motors, which he represented was a car dealership engaged in the business of selling new and used cars.  *Id.* at ¶ 38.  Sumner specifically represented that he would not be involved in the car rental business.  *Id.* at ¶ 38.  Based on Sumner's representations, Enterprise Holdings agreed that Sumner could work for Envision Motors in this role without violating the Noncompetition Agreement.  *Id.* at ¶ 39; Ex. A to *id.*, ¶

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

4(a).  Sumner further agreed that he would "immediately inform and disclose to Enterprise any attempt by any person to involve Sumner, in any manner, in any activity that is competitive with any business of Enterprise Holdings."  *Id.* at ¶ 40; Ex. A to *id.*, ¶ 4(d).

Enterprise Holdings has recently learned that Sumner, in his work for Envision Motors, has been planning and assisting in establishing a car rental business that would compete directly with Enterprise Holdings in clear violation of his Noncompetition Agreement.  *Id.* at ¶ 3, 41. Sumner has been working to expand Envision Motors' business to include the retail rental market, has hired away managers from other car rental companies to help set up this business, and is working to offer car rental services at Envision Motor's existing dealership locations throughout Southern California (*i.e.*, exactly the types of competitive activities for which Sumner can exploit EHI's confidential information).  *Id.* at ¶ 42, 43.  Enterprise Holdings has locations throughout the same region, and will be competing directly with Sumner and Envision Motor's new rental business.  *Id.* at ¶ 42.

Sumner never told Enterprise Holdings before or during the negotiations of the Noncompete Agreement that he and/or Envision Motors had any plans or intentions to expand into the retail rental business, and he failed to inform Enterprise Holdings that he would be involved in this business despite his contractual obligation to do so.  *Id.* at ¶ 45, 46.

## ARGUMENT

### I.    Legal Standard

Missouri Rule 92.02 allows for the issuance of injunctive relief where "immediate and irreparable injury, loss, or damage will result in the absence of relief."  Mo. R. Civ. P. 92.02(a).  A Court need not, and in fact should not, wait until some identifiable injury occurs before granting immediate temporary relief.  *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. banc 1985).  "The primary objective of a temporary restraining order is to maintain the status quo until

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

the need for a permanent injunction can be adjudicated." *Hemme v. Evans*, 866 S.W.2d 922, 923 (Mo. App. 1993); *see also*, *St. Louis Cnty. v. Village of Peerless Park*, 726 S.W.2d 405, 410 (Mo. App. 1987). Maintaining the status quo "is taken to mean not merely freezing the situation as the court now finds it but to mean figuratively the restoration of the parties to the last actual, peaceable, non-contested condition which preceded the pending controversy." *State ex rel. Schoenbacher v. Kelly*, 408 S.W.2d 383, 389 n.2 (Mo. App. 1966) (internal citations and quotation marks omitted). Moreover, Missouri courts have long held that injunctive relief is "peculiarly appropriate" to prevent breaches of restrictive covenants. *E.g., Long v. Huffman*, 557 S.W.2d 911, 914 (Mo. App. 1977).

A court must consider four factors in deciding whether to issue a temporary restraining order: (1) the likelihood of success on the merits; (2) whether the injunction will prevent irreparable injury; (3) whether the injunction will harm others; and (4) whether the public interest will be served. *See State ex rel. Director of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 838, 839 (Mo. 1996) (relying on *Dataphase Sys., Inc. v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *see generally* Mo. R. Civ. P. 92.02. No single factor in itself is dispositive; rather each factor must be considered to determine whether the balance of equities weighs toward granting the injunction. *Furniture Mfg. Corp. v. Joseph*, 900 S.W.2d 642, 648 (Mo. App. 1995).

**II.      EHI is Entitled to a Temporary Restraining Order Preventing Sumner from Breaching the Noncompetition Agreement.**

**A.      EHI will succeed on the merits.**

EHI should prevail on the breach of contract claim in the Verified Petition. A breach of contract claim requires a plaintiff to show: (1) the existence of a valid contract; (2) the rights of plaintiff and obligations of defendant under the contract; (3) a breach by defendant; and (4)

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

damages to the plaintiff caused by the breach. *Clayborne v. Enter. Leasing Co. of St. Louis*, LLC, 524 S.W.3d 101, 106 (Mo. App. 2017).

1.      The Noncompetition Agreement is a valid and enforceable contract.

The Noncompetition Agreement is valid and enforceable.   Under Missouri law, a noncompetition provision against a former employee will be enforced in equity if reasonable under the circumstances and if enforcement protects his former employer's legitimate protectable interests. *See Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841 (Mo. 2012); *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 247 (Mo. App. 1993); *Mo-Kan Cent. Recovery Co. v. Hedenkamp*, 671 S.W.2d 396, 399 (Mo. App. 1984).  Here, these factors cut strongly in favor of a restraining order. Enterprise Holdings has clearly-recognized legitimate business interests protecting its confidential, competitively-valuable (*i.e.*, trade secret) information by preventing Sumner from engaging in activities in which he could exploit such information, as well as in protecting against the loss and potential loss of its customers; the five-year time limitation is reasonable, particularly in light of Sumner's compensation (both as an employee and specifically as provided under the post-employment Noncompetition Agreement) and Sumner's position as a high-level executive wherein he had access to and utilized Enterprise Holdings' confidential and competitively valuable information.

a.      The Noncompetition Agreement protects Enterprise Holdings' legitimate business interests.

Paragraph 4 of the Noncompetition Agreement prohibits Sumner from engaging in any business which competes with Enterprise Holdings' current businesses in regions where Enterprise Holdings operates.  *Id.* at ¶ 25; Ex. A to *id.*, ¶ 4(a).  Paragraph 5 recognizes and protects Enterprise Holdings' interest in its confidential and proprietary information, which includes (among other things), "business and marketing plans and procedures; new product/service concepts; purchasing

agreements . . . strategies; forecasts; customer and/or supplier lists and information; other information concerning the products, services, promotions, development, financing, expansion plans, business policies and practices of Enterprise Holdings . . . ."  *Id.* at ¶ 29; Ex. A to *id.*, ¶ 5. Sumner also acknowledged that by nature of his employment, he had substantial access to this confidential and proprietary information, and in particular, to "client, vendor, supplier and/or customer lists, and client, vendor, supplier and/or customer contacts have been developed by Enterprise Holdings and maintained by Enterprise Holdings at substantial time and expense . . . [and which] could not be easily replicated."  *Id.* at ¶ 30; Ex. A to *id.*, ¶ 5(b).

Missouri law expressly recognizes that a former employer has a legitimate interest in protecting confidential and trade secret information related to its business, customer contacts, and the company's goodwill.  *See, e.g.*, *Whelan*, 379 S.W.3d at 842; *see also Mayer Hoffman McCann, P.C. v. Barton*, 614 F.3d 893, 906 (8th Cir. 2010); *Osage Glass, Inc.*, 693 S.W.2d at 73-75; *Superior Gearbox*, 869 S.W.2d at 247-48; *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 618 (Mo. App. 1988); *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857-59 (Mo. App. 1986). Noncompetition restrictions may also be used "to protect the employer's legitimate interest against unfair use of advantages acquired by the employee in the course of his employment."  *R. E. Harrington, Inc. v. Frick*, 428 S.W.2d 945, 950 (Mo. App. 1968).

These are exactly the interests at stake here.  As a high-level executive, Sumner gained access to Enterprise Holdings' highly confidential and competitively valuable information.  This is exactly the type of information a competitor could exploit to gain an unfair advantage against Enterprise Holdings (marketing plans and procedures; new product/service concepts; fleet management strategies, analyses, metrics, and methodologies; agreements with business partners, suppliers, etc.)—particularly a company such as Envision Motors which is new to the car rental

8

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

business and could benefit from a quick "head start" in the market.  Moreover, Sumner is in a position to exploit and capitalize on the goodwill and relationships he developed with the suppliers, business partners, and customers of Enterprise Holdings through his twenty-five year career.

These constitute legitimate business interests under Missouri law.  *See, e.g., Whelan*, 379 S.W.3d at 841 ("employers have a legitimate interest in engaging a highly trained workforce without the risk of losing customers and business secrets after an employee leaves his or her employment"); *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 611 (Mo. 2006) (a former employer "is entitled to utilize non-compete agreements to protect itself from unfair competition by misuse of its trade secrets or misuse of the employee's customer contacts developed at its expense"); *Superior Gearbox*, 869 S.W.2d at 247-48; *Mid-States Paint & Chem.*, 746 S.W.2d at 618; *Mills v. Murray*, 472 S.W.2d 6, 12 (Mo. App. 1971); *see also Express Scripts, Inc. v. Lavin*, No. 17CV01423 HEA, 2017 WL 2903205, at *1 (E.D. Mo. July 7, 2017) ("An employer has a legitimate protectable interest in its confidential and trade secret information . . ."); *Osage Glass*, 693 S.W.2d at 75; *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *Int'l Bus. Mach. Corp. v. Papermaster*, 2008 WL 4974508, at *8 (S.D.N.Y. Nov. 21, 2008) (enforcing noncompete agreement signed by former IBM executive which prohibited executive from working for any entity that was a significant competitor of IBM or that competed with the business units or divisions in which the executive worked; court noted that the executive had been exposed to sensitive and confidential information about "strategic plans, product development, technical recruitment, and long-term business opportunities").

      **b.**    **The time and geographic restrictions in the Noncompetition Agreement, and the limited relief sought herein against Defendant, are reasonable.**

Under Missouri law, the restrictions in Sumner's covenants are reasonably tailored to protect Enterprise Holdings' legitimate business interests.  Indeed, Sumner—who negotiated the

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

terms of his agreement—explicitly acknowledged as much in Paragraph 7(a) of the agreement: "Sumner acknowledges that the extent of his agreements not to compete with Enterprise Holdings is reasonable in terms of time, scope of activities, and geography, given his status and taking into consideration the substantial economic payments and benefits for him specified in this Agreement, to which Sumner is not otherwise entitled except for this Agreement." *Id.* at ¶ 33; Ex. A to *id.*, ¶ 7(a).

The covenants are effective for a five-year period; Missouri courts have previously enforced similar restrictions. *See, e.g.*, *Superior Gearbox*, 869 S.W.2d at 247 (ten-year nationwide noncompete enforced for five-year period against former executive); *AEE-EMF, Inc. v. Passmore*, 906 S.W.2d 714, 723-24 (Mo. App. 1995) (five-year nationwide noncompete enforced against former executive for three-year period); *cf. A.B. Chance Co.*, 719 S.W.2d at 859 (affirming injunction prohibiting defendant employee from competing in the subject business for five years).

And courts in both Missouri and elsewhere have enforced broad geographic restrictions where appropriate. *See, e.g., Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, at *1 (enforcing nationwide restriction); *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) ("In this Information Age, a *per se* rule against broad geographic restrictions would seem hopelessly antiquated"); *Accelerated Care Plus Corp. v. Diversicare Mgmt. Servs. Co.*, 2011 WL 3678798, at *4 (D. Nev. Aug. 22, 2011) (enforcing global noncompete because the former employer's "business could be affected anywhere" by defendants' conduct); *Mintel Int'l Grp., Ltd. v. Neergheen*, 2010 WL 145786, at *14 (N.D. Ill. Jan. 12, 2010) ("Restrictive covenants that lack geographical limitations may be upheld where, as here, the employer competes for customers on a worldwide basis"); *Darius Int'l, Inc. v. Young*, 2008 WL 1820945, at *38 (E.D. Pa. Apr. 23, 2008) (enforcing world-wide noncompete and stating that where plaintiff's business was "global

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

in scope" it was "reasonable to expect that any meaningful non-competition agreement would also be global in scope"); *Int'l Bus. Mach. Corp.*, 2008 WL 4974508, at *11 (granting preliminary injunction against former IBM executive enforcing world-wide noncompete and stating that IBM's world-wide business "requires that the restriction be unlimited in geographic scope"); *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 477 (E.D. Pa. 2007) (enforcing world-wide noncompete and noting that "the notion of a too-broad geographic scope has become 'antiquated' in light of the increasingly global economy"); <u>*Learn2.com, Inc. v. Bell*</u>, No. 3:00-CV-812-R, 2000 WL 36731362, at *2 (N.D. Tex. July 20, 2000) (granting preliminary injunction enforcing noncompete with no geographical limitation, i.e., worldwide); *Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913-14 (D. Conn. 1996) (covenant with no geographic limit found reasonable in light of international marketing activities); *Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 656 (Tex. App. 1988) (enforcing two-year covenant covering the United States and any foreign country in which the company did business); *Hekimian Labs., Inc. v. Domain Sys., Inc.*, 664 F. Supp. 493, 498 (S. D. Fla. 1987) (worldwide noncompete reasonable).

These restrictions in the Noncompetition Agreement are reasonable as applied to Sumner for several additional reasons.  First, the scope of the restrictions themselves only limit Sumner from working in competing businesses (*i.e.*, broadly speaking, the automotive sales and rental business), and moreover, explicitly carved out the opportunity for Sumner to work at Envision Motors when it was limited to the sale of new and used vehicles.  Second, for the entirety of the five-year restriction, Sumner was to be paid significant compensation pursuant to the Noncompetition Agreement in exchange for his continued compliance with the same.  Moreover, at this point the noncompete restraining order sought is very limited—*i.e.*, it is aimed at preventing

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Sumner from breaching his obligations through and in connection with his affiliation with Envision Motors.

Sumner, a long-term, high-level executive with years of valuable confidential company information, was offered both generous compensation <u>and</u> provided the ability to continue working in his preferred field in exchange for abiding by the restrictive covenants in his Noncompetition Agreement.  Under Missouri law—particularly in light of these circumstances—the restrictions are entirely reasonable to protect Enterprise Holdings' legitimate business interests.

**2.     Defendant has breached the Noncompetition Agreement.**

Sumner clearly has violated the Noncompetition Agreement.  Paragraph 4 of the Noncompetition Agreements contains the key terms.  It provides, in relevant part:

> Sumner shall not, from the date of execution of this Agreement through and including August 31, 2026 [*i.e.*, five years], directly or indirectly, whether as a partner, investor, employee, consultant, owner, creditor, shareholder or otherwise, promote, participate in or engage in any activity, or in any other business, which is competitive with any of Enterprise Holdings' current businesses (as described below) . . . in any city, county, parish, state or province of the United States, Canada or any country where Enterprise Holdings (including any corporation or affiliate or associated business entity included (above) in the definition of "Enterprise Holdings") had existing operations or conducted business as of Separation Date . . . . Sumner hereby acknowledges that Enterprise Holdings is engaged in each of the following businesses, among others:  automotive, van and truck leasing; automotive, van and truck rental . . . .

Verified Pet. ¶¶ 25, 26; Ex. A to *id.*, ¶ 4(a).

The Noncompete Agreement is unequivocal; Sumner cannot engage in any rental car business in any region where Enterprise Holdings had existing operations as of August 31, 2021. *Id.* at ¶ 25; Ex. A to *id.*, ¶ 4(a).  Enterprise Holdings has various rental car facilities throughout the Southern California/ Greater Los Angeles region, and had such facilities long before Sumner's Separation Date. *Id.* at ¶ 42.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Under a limited carve-out, Enterprise Holdings permitted Sumner to work as General Manager for Envision Motors, an automotive dealership, upon his representations that Envision Motors was engaged in the business of selling new and used cars, and Sumner's representations that his work would be limited to this business as well. *Id.* at ¶ 38. But Enterprise Holdings has now learned that after Sumner started working at Envision Motors (and had already received and accepted several payments from Enterprise Holdings under the Noncompetition Agreement), Sumner helped Envision Motors expand its business to include the rental car business as well.

In other words, Sumner, by and through his work for Envision Motors and its new, related business, Envision Rent-A-Car, is and will continue to be competing directly with Enterprise Holdings in the rental car business in a region where Enterprise Holdings has long operated. Sumner's failure to "immediately inform and disclose" to Enterprise Holdings that he would be working in the rental car business constitutes yet another breach of his Noncompetition Agreement.

Sumner has plainly breached—and continues to breach—his obligations under the Noncompetition Agreement, and should be enjoined from doing so further.

**B.      Enterprise Holdings has suffered, and will continue to suffer, irreparable injury absent the requested relief.**

Absent a temporary restraining order, Enterprise Holdings is left without the protection it needs. In fact, Defendant explicitly and specifically acknowledged this in Paragraph 7(b) of the Noncompetition Agreement, which states that a breach of his obligations under the Agreement "**will** result in irreparable harm for which Enterprise Holdings cannot reasonably or adequately be compensated in damages in an action at law," and, accordingly, "in addition to each and every other remedy provided by law or equity, Enterprise Holdings shall have the right to obtain injunctive relief (including, but not limited to, specific performance, a temporary restraining order

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

and a preliminary, permanent or mandatory injunction), without any requirement to post a bond, against any breach of this Agreement by Sumner."  Verified Pet. ¶¶ 34, 53; Ex. A to *id.*, ¶ 4(b).

The harm and injury Enterprise Holdings will suffer if Sumner is allowed to work for Envision in violation of his contractual obligations cannot be fully or adequately compensated by money damages alone.  *See, e.g., Long*, 557 S.W.2d at 914 ("Contracts of noncompetition . . . will ordinarily be enforced in equity because, for the breach of such a covenant, there is no adequate remedy at law and the very purpose of such a contract may be met only by exact conformance to the terms undertaken.  Thus, the injunctive remedy is peculiarly appropriate both because of the obligation of the contract and because the full damage to be suffered by the breach cannot be known certainly.") (citation omitted); *see also Mills*, 472 S.W.2d at 18; *Perficient Inc. v. Gupta*, No. 4:21CV759-HEA, 2021 WL 2805282, at *1 (E.D. Mo. July 6, 2021) ("Irreparable harm is also properly presumed where there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used."); *Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, at *8 (same).

Economic damages cannot fully or adequately compensate Enterprise Holdings for the "head start" Sumner has unfairly given Envision Motors in competing against Enterprise Holdings in Southern California.  In helping Envision Motors with this competing business, Sumner has been in a position to use his intimate knowledge of Enterprise Holdings' confidential information and business strategies, including how to evaluate when and where to open new facilities, fleet management strategies, marketing strategies, and more.  *See Osage Glass*, 693 S.W.2d at 75 (enforcing noncompete where defendant "occupied a position in which he could cause substantial harm to the plaintiff by going to work for a competitor"); *see also Furniture Mfg. Corp.*, 900 S.W.2d at 647; *N.I.S. Corp.*, 724 F.2d at 710.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

This is in addition to the goodwill and confidential information Sumner can exploit in connection with his and Envision Motors' dealings with vendors, strategic partners, and customers as a result of his twenty-five years with Enterprise Holdings.  Indeed, courts in Missouri have recognized that the loss of customer goodwill and potential misuse of confidential and trade secret information cannot be fully compensated by monetary relief and that such loss or threatened loss satisfies the irreparable harm element.  *See, e.g., Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 846 (8th Cir. 2005); *Perficient Inc.*, 2021 WL 2805282, at *1; *Express Scripts, Inc.*, 2017 WL 2903205, at *8; *Mills*, 472 S.W.2d at 18; *A.B. Chance Co.*, 719 S.W.2d at 860.  This is exactly what faces Enterprise Holdings faces here.

An order maintaining the status quo and temporarily enjoining Sumner from working for Envision is both necessary and appropriate.  *See Long*, 557 S.W.2d at 914 ("Contracts of noncompetition . . . will ordinarily be enforced in equity because, for the breach of such a covenant, there is no adequate remedy at law and the very purpose of such a contract may be met only by exact conformance to the terms undertaken.  Thus, the injunctive remedy is peculiarly appropriate both because of the obligation of the contract and because the full damage to be suffered by the breach cannot be known certainly.") (citation omitted).

**C.     The Equities and Public Interest Favor Injunctive Relief.**

The equities support this Court's granting of temporary injunctive relief.  Enjoining Sumner from working for Envision will only hold him to the terms of the  Noncompetition Agreement he willingly and knowingly signed.  He has already received significant compensation under his Noncompetition Agreement, having received six payments from September 30, 2021 through February 28, 2022, totaling several hundred thousand dollars.  There is no undue hardship or inequity in requiring Sumner to honor his contractual promises after he has willingly accepted and reaped the substantial financial rewards already paid under the contract.  *See Osage Glass*,

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

693 S.W.2d at 75; *Ballesteros v. Johnson*, 812 S.W.2d 217, 222 (Mo. App. 1991); *see also Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, at *9.

The public interest also supports issuance of a temporary restraining order prohibiting Sumner from violating the covenants.  Missouri has a policy in favor of enforcing contracts, including reasonable restrictive covenants which protect the legitimate business interests of Missouri-based companies such as Enterprise Holdings.  *See N.I.S. Corp.*, 724 F.2d at 710 ("If these noncompete agreements are valid, the public interest calls for their enforcement."); *Willman v. Beheler*, 499 S.W.2d 770, 777 (Mo. 1973) (abrogated on other grounds) (recognizing the public interest in protecting the freedom of persons to contract by enforcing contractual rights and obligations).  Missouri's policy of enforcing contractual obligations and reasonable restrictive covenants would be served by issuance of a TRO enforcing the Noncompetition Agreement and protecting Enterprise Holdings' legitimate business interests.

## <u>CONCLUSION</u>

For the reasons set forth in the Verified Petition, Motion for a TRO, and this Memorandum, EHI respectfully requests that the Court grant its Motion for a Temporary Restraining Order

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Dated: March 30, 2022

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP


By:/s/  *Mark S. Deiermann*
    Mark S. Deiermann, #31521
    Jason S. Meyer, #64030
    Ellen E. Whitehorn, #71226
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    Telephone: (314) 259-2000
    Facsimile: (314) 259-2020
    msdeiermann@bclplaw.com
    jason.meyer@bclplaw.com
    ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

17

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

### CERTIFICATE OF SERVICE

  I hereby certify that on this 30th day of March, 2022, the foregoing was delivered for personal service upon the following:

   Stephen Boyd Sumner
   823 I. Ave.
   Coronado, California 92118-2447


         _____*/s/ Mark S. Deiermann*_____

18

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

March 30, 2022
Date

The Crawford Group, Inc. and Enterprise Holdings, Inc.
Plaintiff/Petitioner

_____
Case Number

vs.

_____
Division

Stephen Boyd Sumner
Defendant/Respondent

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiffs The Crawford Group, Inc. and Enterprise Holdings, Inc.  , pursuant
                                Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
 Mark Brown          530 B. Street Suite 1030, San Diego, CA 92101          619-231-9111
Name of Process Server              Address                                        Telephone

_____
Name of Process Server              Address or in the Alternative                  Telephone

_____
Name of Process Server              Address or in the Alternative                  Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                              SERVE:

 Stephen Boyd Sumner                                _____
Name                                               Name
 823 I Ave.                                         _____
Address                                            Address
 Coronado, CA 92118-2447                            _____
City/State/Zip                                      City/State/Zip

SERVE:                                              SERVE:

_____                    _____
Name                                               Name
_____                    _____
Address                                            Address
_____                    _____
City/State/Zip                                      City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk                    /s/ Mark S. Deiermann
                                                   Signature of Attorney/Plaintiff/Petitioner
                                                    31521
By  **/s/ANDREA KAID-ALLEN**                         Bar No.
    Deputy Clerk                                     211 N. Broadway, Suite 3600, St. Louis, MO 63102
                                                   Address
**03-30-2022**                                       (314) 259-2000          (314) 259-2020
Date                                               Phone No.                 Fax No.

CCADM62-WS    Rev. 07/19

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS     Rev. 07/19

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

**In the**
# CIRCUIT COURT
**Of St. Louis County, Missouri**

March 30, 2022
Date

_____
Case Number

_____
Division

For File Stamp Only

The Crawford Group, Inc. and Enterprise Holdings, Inc.
Plaintiff/Petitioner

vs.

Stephen Boyd Sumner
Defendant/Respondent

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiffs The Crawford Group, Inc. and Enterprise Holdings, Inc.  , pursuant
                              Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
 Mark Brown          530 B. Street Suite 1030, San Diego, CA 92101       619-231-9111
Name of Process Server         Address                              Telephone

_____
Name of Process Server         Address or in the Alternative              Telephone

_____
Name of Process Server         Address or in the Alternative              Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                    SERVE:
 Stephen Boyd Sumner                       _____
Name                                      Name
 823 I Ave.                                _____
Address                                   Address
 Coronado, CA 92118-2447                   _____
City/State/Zip                            City/State/Zip

SERVE:                                    SERVE:
_____                    _____
Name                                      Name
_____                    _____
Address                                   Address
_____                    _____
City/State/Zip                            City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

 /s/ Mark S. Deiermann
Signature of Attorney/Plaintiff/Petitioner
 31521
Bar No.
 211 N. Broadway, Suite 3600, St. Louis, MO 63102
Address
 (314) 259-2000        (314) 259-2020
Phone No.                   Fax No.

By _____
    Deputy Clerk

_____
Date

CCADM62-WS    Rev. 07/19

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS     Rev. 07/19

**22SL-CC01953**

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

In the
# CIRCUIT COURT
of St. Louis County, Missouri

The Crawford Group, Inc. and
Enterprise Holdings, Inc.
Plaintiff(s)

3/30/22
Date

For File Stamp Only
# FILED
MAR 3 0 2022

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

vs.

Stephen Boyd Sumner
Defendant(s)

Case Number
7

Division

ORDER

It is hereby ordered, ~~upon~~ Plaintiffs' Motion to
Seal, that Plaintiffs may file Exhibit A to
their petition (a Noncompetition agreement containing
confidential terms), at level 5 protection.

**SO ORDERED**

_____
Judge

ENTERED: 3-30-2022
(Date)

Jason Meyer          64030
Attorney          Bar No.
Bryan Cave Leighton Paisner LLP
Address 211 N. Broadway, Suite 3600 63102
314-259-2000
Phone No.          Fax No.

_____
Attorney          Bar No.

_____
Address

_____
Phone No.          Fax No.

CCOPR47-WS  Rev. 02/14



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRIAN H MAY | **Case Number:  22SL-CC01953** |
| Plaintiff/Petitioner:<br>THE CRAWFORD GROUP, INC. | Plaintiff's/Petitioner's Attorney/Address:<br>MARK S DEIERMANN<br>SUITE 3600<br>211 NORTH BROADWAY<br>SAINT LOUIS, MO  63102 |
| **vs.** | |
| Defendant/Respondent:<br>STEPHEN BOYD SUMNER | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **STEPHEN BOYD SUMNER**
                                   **Alias:**

**823 I AVE.**
**CORONADO, CA  92118**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

      **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
      **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>30-MAR-2022</u>
**Date**
**Further Information:**
**AKA**

_____
**Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐  delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐  leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____, a person at least 18 years of age residing therein.

    ☐  (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
    ☐  other (describe) _____
_____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____        _____
        Printed Name of Sheriff or Server                   Signature of Sheriff or Server
      **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)  ☐  the clerk of the court of which affiant is an officer.
                   ☐  the judge of the court of which affiant is an officer.
*(Seal)*            ☐  authorized to administer oaths in the state in which the affiant served the above summons.
                      (use for out-of-state officer)
                 ☐  authorized to administer oaths.  (use for court-appointed server)

_____
                  Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

   **(3)** **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

   **(4)** **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

   **(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

   If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.   The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

   A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.   The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

   The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

Electronically Filed - St Louis County - March 31, 2022 - 04:40 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| THE CRAWFORD GROUP, INC. and | ) | |
| ENTERPRISE HOLDINGS, INC., | ) | |
| | ) | Cause No. 22SL-CC01953 |
| Plaintiffs, | ) | |
| | ) | Division No. 1 |
| v. | ) | |
| | ) | |
| STEPHEN BOYD SUMNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ENTRY OF APPEARANCE**

Jason S. Meyer of Bryan Cave Leighton Paisner LLP hereby enters his appearance on

behalf of Plaintiffs The Crawford Group, Inc. and Enterprise Holdings, Inc.

Dated: March 31, 2022

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP


By:/s/  *Jason S. Meyer*
    Mark S. Deiermann, #31521
    Jason S. Meyer, #64030
    Ellen E. Whitehorn, #71226
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    Telephone: (314) 259-2000
    Facsimile: (314) 259-2020
    msdeiermann@bclplaw.com
    jason.meyer@bclplaw.com
    ellen.whitehorn@bclplaw.com

    ATTORNEYS FOR PLAINTIFFS

Electronically Filed - St Louis County - March 31, 2022 - 04:40 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2022, the foregoing was filed with the Clerk of Court electronically to be served by operation of the Court's electronic filing system upon all counsel of record, and was sent via U.S. Mail to the following:

Stephen Boyd Sumner
823 I. Ave.
Coronado, California 92118-2447

*/s/ Jason S. Meyer*

Electronically Filed - St Louis County - April 01, 2022 - 10:14 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| THE CRAWFORD GROUP, INC. and ENTERPRISE HOLDINGS, INC., | ) )  ) |
| Plaintiffs, | ) )  Cause No. 22SL-CC01953 |
| v. | ) )  Division No. 1 |
| BOYD SUMNER, | ) ) |
| Defendant. | ) ) |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Plaintiff Enterprise Holdings, Inc. will call up for hearing

its Motion for Temporary Restraining Order, on <u>Monday, April 4, 2022, at 9:00 a.m.</u>

The hearing shall take place remotely via WebEx, accessible through the following link:

      **WebEx Meeting Link**: https://mocourts.webex.com/meet/vcdiv1mtg
      **Call in number**:  1-408-418-9388 (tolls apply)
      **Meeting number**:   146 629 5570

Dated: April 1, 2022            Respectfully submitted,

                        BRYAN CAVE LEIGHTON PAISNER LLP

                        By:/s/  *Jason S. Meyer*
                           Mark S. Deiermann, #31521
                           Jason S. Meyer, #64030
                           Ellen E. Whitehorn, #71226
                           211 North Broadway, Suite 3600
                           St. Louis, MO 63102
                           Telephone: (314) 259-2000
                           Facsimile: (314) 259-2020
                           msdeiermann@bclplaw.com
                           jason.meyer@bclplaw.com
                           ellen.whitehorn@bclplaw.com

                        ATTORNEYS FOR PLAINTIFFS

Electronically Filed - St Louis County - April 01, 2022 - 10:14 AM

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2022, the foregoing was filed with the Clerk of Court electronically to be served by operation of the Court's electronic filing system upon all counsel of record, and was sent via U.S. Mail and e-mail to the following:

> Stephen Boyd Sumner
> 823 I. Ave.
> Coronado, California 92118-2447
> Boydsumner8@gmail.com

*/s/ Jason S. Meyer*

2



**IN THE  21ST JUDICIAL CIRCUIT  COURT, _____ ST. LOUIS COUNTY _____ , MISSOURI**

| |
|---|
| The Crawford Group, Inc. Et Al |
|         Plaintiff, |
|                       vs. |
| Stephen Sumner |
|         Defendant. |
| Case Number:  22SL-CC01953 |

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Stephen Boyd Sumner, Defendant, in the above-styled cause.


/s/ Melody L. Rayl
_____
Melody Lorrain Rayl
Mo Bar Number: 60362
Attorney for Defendant
4900 Main Street
Suite 650
Kansas City, MO 64112
Phone Number: (816) 842-8770
mrayl@fisherphillips.com

---

### Certificate of Service

I hereby certify that on _____ April 4th, 2022 _____, a copy of the foregoing was sent through the

Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery,

electronic mail or U.S. mail postage prepaid to their last known address.


/s/ Melody L. Rayl
_____
Melody Lorrain Rayl

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| THE CRAWFORD GROUP, INC., et al. | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 22SL-CC01953** |
| vs. | ) | |
| | ) | **Division No. 1** |
| STEPHEN BOYD SUMNER, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S SUGGESTIONS IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant Stephen Boyd Sumner ("Sumner"), by and through the undersigned counsel, hereby submits the following suggestions in opposition to Plaintiff Enterprise Holdings, Inc.'s ("Enterprise") Motion for Temporary Restraining Order filed on March 30, 2022.  For the reasons set forth herein, Enterprise's motion should be denied.

## <u>INTRODUCTION</u>

Enterprise asks this Court to enter a Temporary Restraining Order ("TRO") prohibiting Sumner from working for the very company for whom Enterprise has contractually agreed to permit him to be employed, namely Envision Motors Management, LLC ("Envision"). Enterprise fails to explain why the express terms of the contract entered into by the parties should not govern or how Sumner can be in breach of the contract by doing exactly what its plain and unambiguous language permits him to do.  If Enterprise wanted to place conditions on Sumner's employment with Envision, it should have included that language in the contract it negotiated with him.  Enterprise also fails to explain how a five-year, worldwide prohibition against Sumner working in any capacity for any entity that engages in the sale or rental of motor

1

vehicles can possibly be legally necessary to protect Enterprise's legitimate business interests. Finally, Enterprise requests a TRO prohibiting Sumner from using or disclosing its confidential and proprietary information despite that Sumner has not done so, threatened to do so, or intend to do so.  Indeed, Sumner does not even have any of Enterprise's confidential and proprietary information.  That being the case, there has been no breach of Sumner's contract with Enterprise, there has been no harm to Enterprise, and there is no threat of imminent harm to Enterprise's interests, and Enterprise's Motion for a TRO should be denied in its entirety.

## STATEMENT OF THE CASE

From 1996 until 2021, Sumner was employed by Enterprise.  [Declaration of Stephen Boyd Sumner (hereafter, "Sumner Decl."), attached hereto as **Exhibit 1**, ¶ 4].  For the four years prior to his forced resignation from Enterprise, Sumner was the Vice President/General Manager for Enterprise Rent-a-Car Canada and was assigned to the Vancouver, British Columbia, market area.  [Exhibit 1, Sumner Decl., ¶ 5].  In mid-2021 it became apparent to Sumner that his leadership was no longer welcome at Enterprise, and he began discussing his departure.  [Exhibit 1, Sumner Decl., ¶ 6].  As part of his exit package, Enterprise desired to have Sumner enter into an additional non-competition agreement that would extend the geographic scope of his existing restrictive covenant from only the Canadian market area in which he worked to a worldwide restricted territory.  [Exhibit 1, Sumner Decl., ¶ 7].  Because Sumner was exploring an opportunity as a General Manager for Envision, he informed Enterprise that he would agree to enter into a new non-competition agreement only if it expressly permitted him to take a position as General Manager for Envision – otherwise, he would not sign it.  [Exhibit 1, Sumner Decl., ¶ 7].  Enterprise agreed, and Sumner entered into the Noncompetition and Nonsolicitation

Agreement and Release (the "Agreement") attached as Exhibit A to Enterprise's memorandum in support of its motion for a temporary restraining order.

The Agreement includes an incredibly broad non-competition provision that prohibits Sumner from participating or engaging in any activity which is purportedly competitive with Enterprise anywhere in the United States, Canada or in any country in which Enterprise conducts business, has plans to conduct business, or conducts business in the future.  [Agreement, ¶ 4]. The Agreement further defines Enterprise's business activities as including motor vehicle leasing and rental; new or used motor vehicle sales; motor vehicle fleet management; rideshare operations; and various other services offered by Enterprise.  [Agreement, ¶ 4].  However, the Agreement contains the following carve out to accommodate Sumner's request to be permitted to work for Envision:

> As an exception to and not a waiver of any restriction in this Paragraph [4], Sumner shall be authorized to pursue and engage in an opportunity with Envision Motors Management, LLC as an investor and General Manager.

[Agreement, ¶ 4].  It was understood by the parties at the time that Envision engages in one or more of the business activities Enterprise also participates in, and there is no language within the carve-out provision of the Agreement that further restricts what activities Sumner is authorized to engage in on behalf of Envision.  [Agreement, ¶ 4].  Sumner's employment with Enterprise ended effective August 31, 2021.

As he had hoped would be the case and as he disclosed to Enterprise prior to his departure, Sumner accepted a position as General Manager with Envision shortly after leaving Enterprise.  [Exhibit 1, Sumner Decl., ¶ 2].  In November 2021, Sumner relocated to the Los Angeles, California, area with his family to begin his duties as General Manager with Envision. *Id*.  At the time Sumner accepted the position with Envision, its existing business operations included the operation of several new and used motor vehicle dealerships, primarily in

California, as well as a handful of Toyota Rent-a-Car and Honda Rent-a-Car operations. [Exhibit 1, Sumner Decl., ¶ 3].  As part of its motor vehicle dealership operations, Envision owns a fleet of over 500 loaner vehicles that are rented to its dealership service customers, as well as insurance customers and the public.  [Exhibit 1, Sumner Decl., ¶ 3].  Envision's rental operations utilize entirely different software platforms than those utilized by Enterprise, and Sumner is operating in an entirely different market area – indeed different country – than where he spent his last four years with Enterprise. [Exhibit 1, Sumner Decl., ¶¶ 5, 11].  Sumner has not engaged in any conduct in violation of his obligations to Enterprise under the Agreement, nor does he intend to do so.  [Exhibit 1, Sumner Decl., ¶¶ 10, 12-13].

In March 2022, Envision began developing a business plan to enlarge its loaner car rental offerings to the public so as to make better use of its loaner fleet when it was not needed for Envision's service customers.  [Exhibit 1, Sumner Decl., ¶ 9].  As a courtesy, Sumner contacted Scott Clemmer, General Manager of Enterprise for California, to inform him of the anticipated enlargement of Envision's loaner car rental operations.  *Id*.  In response, Enterprise has filed this lawsuit, in which it alleges Sumner has somehow breached his obligations under the Agreement and asks this Court to put him out of work, despite Enterprise's express promise to allow him to be employed in the very same position and with the very same company with whom he is now employed.

## ARGUMENT AND AUTHORITIES

Missouri Rule of Civil Procedure 92.02 permits the entry of a temporary restraining order where it clearly appears from the facts shown in the Verified Petition that immediate and irreparable injury, loss, or damage will result before a hearing on the merits.  In determining whether injunctive relief is warranted, this Court must consider four factors: (i) a likelihood of

success on the merits; (ii) a substantial threat that absent injunctive relief irreparable harm is being inflicted on Enterprise; (iii) greater injury will result from denial of the injunction than from its being granted; and (iv) that an injunction would serve the public interest.  *See* RSMo § 526.050; *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. 1985) (en banc); *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 859-60 (Mo. App. 1986).

As Enterprise correctly states in its argument in support of injunctive relief, the purpose of a temporary restraining order is to "maintain the status quo until the need for a permanent injunction can be adjudicated."  *See* Memorandum in Support of TRO, pp. 5-6 (citing *Hemme v. Evans*, 866 S.W.2d 922, 923 (Mo. App. 1993).  Enterprise also acknowledges that "[m]aintaining the status quo 'is taken to mean not merely freezing the situation as the court now finds it but to mean figuratively the restoration of the parties to the last actual, peaceable, non-contested condition which preceded the pending controversy."  *Id.* (citing *State ex rel. Schoenbacher v. Kelly*, 408 S.W.2d 383, 389 n. (Mo. App 1966).  In this case, the last non-contested condition of the parties was that Sumner was leaving Enterprise and would likely be taking a position as General Manager with Envision – which is exactly where we find ourselves today.   Yet Enterprise seeks to have this Court rewrite the contractual agreement of the parties to prohibit Sumner from engaging in conduct expressly agreed to.  This they cannot do, and Enterprise's request for a TRO should be denied.

I.     **THE COURT SHOULD DENY INJUNCTIVE RELIEF BECAUSE ENTERPRISE CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS, AND THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF.**

A.     **Sumner Has Not Breached the Agreement**

In its Verified Petition, Enterprise has asserted a single claim against Sumner for breach of contract.  Specifically, Enterprise alleges Sumner breached the Agreement when he failed to

inform Enterprise that Envision was expanding its loaner fleet rental operations and because he is engaging in direct competition with Enterprise by working for Envision.   [Petition, ¶50]. However, neither of these theories states an actionable claim for breach of contract.

First, Sumner *did* notify Enterprise of Envision's planned expansion of its loaner fleet rental operations – indeed that is likely the only way Enterprise became aware of it.  Second, and most importantly, Enterprise expressly agreed to permit Sumner to work as a General Manager for Envision without restriction.   The notion that Enterprise intended to allow Sumner's employment with Envision only if Envision limited its business practices for the duration of Sumner's five-year obligation under the Agreement is not supported in the Agreement and, frankly, is absurd.  "Disregarding either party's secret surmise or undisclosed assumption, the court must ascertain the parties' meaning and intent as expressed in the language used and give effect to that intent." *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 369 (Mo. Ct. App. 2003) (citing *Peet v. Randolph,* 33 S.W.3d 614, 618-619 (Mo.App. E.D.2000)).   If Enterprise wanted to restrict Sumner in such a manner, then it should have included language to that effect in the Agreement.  The fact that Enterprise has now decided it should have done so does not create a breach by Sumner.  He should not be put out of work merely because Enterprise has regrets.

**B.**    **The Non-Competition Covenant in the Agreement is Not Enforceable Under Missouri Law.**

 Under Missouri law, general non-competition covenants are enforceable only if they are reasonable, meaning if "it is no more restrictive than is necessary to protect the legitimate interest of the employer." *Sigma-Aldrich Corp. v. Vikin*, 451 S.W.3d 767, 771 (Mo. Ct. App. 2014).   As such, a non-compete agreement must be narrowly tailored geographically and temporally. *Id.* Restrictive covenants are not enforceable to protect an employer from mere

competition by a former employee, but only to the extent that they protect the employer's trade secrets or customer contacts. *Id.* The employer has the burden to prove the reasonableness of the non-compete agreement. *Id.* (citing *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. banc 2012)).

Here, the non-competition covenant in the Agreement is extremely broad and not necessary to protect Enterprise's legitimate interests. Sumner's agreement purports to prevent him, for five years after the end of his employment, from working *in any capacity* for any entity engaged in the sale, lease or rental of motor vehicles throughout the entire United States and Canada, or in any other country in the world in which Enterprise conducts business. Agreement, ¶4. Yet it is undisputed that for the four years prior to Sumner's departure from Enterprise, he was assigned exclusively to Enterprise's Canadian operations in Vancouver, British Columbia. Enterprise itself agreed that the restrictive covenant was broader in scope than was necessary to protect its legitimate business interests when it agreed to the carve-out that permitted Sumner to accept the General Manager position with Envision.

It is entirely unreasonable to bar Sumner from working in the occupation in which he has been engage for 26 years – virtually his entire adult life – anywhere in the world. While Enterprise alleges repeatedly that Sumner's knowledge of Enterprise's business operations will allow him to unfairly compete with Enterprise – it is entirely unclear what they believe will provide Sumner with an unfair competitive advantage. Envision operates on an entirely different business model, uses entirely different software platforms, and is simply not in the same type of rental car business as Enterprise. It is clear that what Enterprise seeks to do here is to prevent normal competition. Sumner was a highly skilled employee, and he has now taken those skills elsewhere.

Missouri law recognizes trade secrets and customer contacts as legitimate business interests of employers that can support enforcement of restrictive covenants. See *Sigma-Aldrich Corp.*, 451 S.W.3d at 771.  Indeed, Enterprise protected those interests by including covenants in Sumner's Agreement prohibiting him from soliciting its employees and customers for five years post-employment, and from using or disclosing any of its confidential and proprietary information.  The inclusion of these covenants in Sumner's agreement shows that Enterprise knew how to attempt to protect these legitimate interests.  Sumner has stated he did not take any of Enterprise's confidential and proprietary information with him, does not intend to solicit or divert Enterprise's customers, and does not intend to solicit or hire away Enterprise's employees.  Enterprise has failed to demonstrate why a general prohibition on Sumner's employment, in *any* capacity, in *any* geographic location, with *any* business that rents or sells motor vehicles is necessary to protect Enterprise's legitimate business interests or is enforceable under Missouri law. The Court should deny Enterprise's request for a TRO prohibiting Sumner from "mere competition" with Enterprise.

### C.    The Balance of Harms and Public Interest Weigh Against Injunctive Relief.

Any threatened injury to Enterprise as a result of Sumner's continued employment with Envision in the Los Angeles area certainly does not "overwhelmingly outweigh" the harm that would result to Sumner by entry of an injunction prohibiting such employment. As long as Sumner is taking steps to protect Enterprise's legitimate business interests (which he is, as indicated above), any harm that Enterprise suffers would be the result of "mere competition" and not any improper conduct by Sumner.  On the other hand, Sumner would be greatly harmed by the entry of a TRO that prohibits him from continuing employment in his chosen line of work for the very company Enterprise agreed to permit him to work for.  Sumner has accepted a position

with Envision in Los Angeles, uprooting and moving his family from Vancouver, British Columbia in the process.  Enterprise seeks to keep Sumner from not only working for Envision, but from being involved in any capacity with the industry he has worked in for well over two decades.

Similarly, with respect to the third factor (the public interest), Missouri courts generally acknowledge that there are competing factors at play when analyzing the enforceability of restrictive covenants: "First, the employer needs to be able to engage a highly trained workforce to be competitive and profitable, without fear that the employee will use the employer's business secrets against it or steal the employer's customers after leaving employment." *Tank Tech, Inc. v. Neal*, 2007 WL 2137817 at *6 (E.D. Mo. July 23, 2007) (citing *West Group Broadcasting, Ltd. v. Bell*, 942 S.W.2d 934, 937 (Mo. Ct. App. 1997)). "Second, the employee must be mobile in order to provide for his or her family and advance his or her career in an ever-changing marketplace. This mobility is dependent on the employee's ability to take his or her increasing skills and put them to work from one employer to the next." *Id.* "Third, the law favors freedom of parties to value their respective interests in negotiated contracts." *Id.*, citing *Willman v. Beheler*, 499 S.W.2d. 770, 777 (Mo. 1973). "And fourth, contracts in restraint of trade are unlawful." *Id.*, citing *Healthcare Services of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 609-610 (Mo. 2006).

Here, as explained above, there is no evidence that Sumner is "stealing" Enterprise's customers or employees or using Enterprise's trade secret information.  Moreover, the parties negotiated a contract that expressly permits Sumner to work for Envision.  Enterprise negotiated the terms of the Agreement and is now required to honor its promises.  Enterprise is not entitled to a "do over" or to change the express terms of the Agreement because they have now

discovered additional information about Envision's business and regret their negotiated agreement with Sumner.   Moreover, the entry of a TRO prohibiting Sumner's continued employment with Envision would severely affect his "ability to provide for his family and advance his career in an everchanging marketplace." The "public interest" in this case militates against entry of the injunctive relief that Enterprise requests.

## II.     THERE IS NO EVIDENCE THAT ENTERPRISE SUFFER IRREPARABLE HARM

Sumner agrees with Enterprise that the threat of irreparable harm is an important factor that this Court must consider in determining whether to grant Enterprise's Motion. However, Sumner does not agree that he has breached, is breaching or is threatening to breach any enforceable covenants in the Agreement in any manner that would be likely to cause irreparable harm to Enterprise.  Enterprise has no evidence (nor could it have any such evidence) that Sumner has (a) solicited or diverted any Enterprise customers, or otherwise encouraged them to cease or reduce their relationships with Enterprise; (b) solicited or induced any Enterprise employee to leave their employment with Enterprise; or (c) used or disclosed any of Enterprise's trade secrets or other confidential or proprietary business information. Since leaving Enterprise, Sumner has not initiated or responded to contact from customers he served during his employment with Enterprise, nor does he intend to do so, particularly since he is no longer working in the Canadian market area in which he was engaged with Enterprise.

Finally, Sumner has not used or disclosed any of Enterprise's trade secrets or confidential business information in the course of his employment with Envision, nor does he intend to do so. Missouri courts have identified six factors in determining whether given information is a "trade secret", including: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and other involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by

the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Healthcare Services of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610-611 (Mo. banc. 2006). The burden of proof rests with the employer to substantiate its asserted interest in its trade secrets. *Id*. at 611. The evidence of the purported trade secret "must be sufficiently specific to allow a court to make a determination." *Id.* at 611. Aside from a rote recitation of the definition of "Confidential Information" from the Agreement, Enterprise makes no attempt to identify the specific information it believes to be at risk or the real potential for damage.

There is absolutely no evidence that Sumner has engaged or is threatening to engage in any conduct threatening Enterprise with imminent harm that is beyond "mere competition" and legally preventable. To the extent Enterprise is claiming imminent harm from Sumner's continued employment with Envision, it has not demonstrated how that employment would result in such harm.

## CONCLUSION

Enterprise has not met its burden to demonstrate why the entry of a TRO against Sumner is necessary to protect its legitimate business interests. Sumner has not breached the Agreement in any way, and the general non-competition covenants contained in the Agreement is not enforceable because it is not necessary to protect Enterprise's legitimate interests. Those interests are adequately protected by the other covenants in Sumner's agreement, which he is not violating or threatening to violate, nor does he intend to violate. Enterprise agreed that was the case when included a carve-out in the Agreement expressly permitting Sumner to work for Envision after despite the non-competition restrictive covenant. Under these circumstances, Enterprise's request for a TRO or preliminary injunction against Defendants must be denied.

11

Respectfully submitted,

/s/ Melody L. Rayl

Melody L. Rayl                    MO Bar No. 60362
FISHER & PHILLIPS LLP
4900 Main Street, Suite 650
Kansas City, MO 64112
TEL: (816) 842-8770
FAX: (816) 842-8767
Email: mrayl@fisherphillips.com

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 4th day of April, 2022, the foregoing was served via electronic mail and filed the court's electronic filing system, which sent notice to the following counsel of record:

Mark S. Deiermann
Jason S. Meyer
Ellen E. Whitehorn
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Tel: 314.259.2000
Fax: 314.259.2020
Email: msdeiermann@bclplaw.com
Email: jason.meyer@bclplaw.com
Email: ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

/s/ Melody L Rayl
Attorney for Defendant

# Exhibit 1

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **THE CRAWFORD GROUP, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 22SL-CC01953** |
| **vs.** | ) | |
| | ) | **Division No. 1** |
| **STEPHEN BOYD SUMNER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DECLARATION OF STEPHEN BOYD SUMNER**

---

I, Stephen Boyd Sumner, upon personal knowledge, declare and state as follows:

1.      My name is Stephen "Boyd" Sumner.  I am over the age of 18 and am competent to make this declaration.  I have personal knowledge of the factual matters set forth herein and, if called as a witness, could and would testify competently to them consistent with this declaration.

2.      I am employed by Envision Motors Management, LLC ("Envision") in the position of General Manager.  I have held the position of General Manager with Envision since November 1, 2021, and I am assigned to work within Envision's business operations in the California and Flagstaff, Arizona, market areas.

3.      Envision operates several automobile dealerships in Los Angeles, San Diego, and Milipitas, California as well as Flagstaff, Arizona.  As part of its automobile dealership business, Envision owns and operates a fleet of over 500 loaner vehicles.  Envision owns and operates a number of Toyota and Honda dealerships that include manufacturer endorsed car rental components, Toyota Rent-a-Car and Honda Rent-a-Car, to rent Envision's loaner vehicles to the

1

public, insurance customers and dealership service customers.   These loaner fleet rental operations existed well before my affiliation with Envision

4.      Prior to being employed by Envision, I was employed by Enterprise Holdings, Inc. ("Enterprise") from 1996 until my forced resignation in August 2021.

5.      During my employment with Enterprise, I held a number of positions in different geographic markets.  From 2013 until 2017, I was assigned to the Phoenix, Arizona market area. In 2017, I was promoted to the position of Vice President/General Manager for Enterprise Rent-a-Car Canada Company and was assigned to the Vancouver, British Columbia market area.  I have not worked for Enterprise in the California market area since 2013.

6.      In or about July 2021, it became apparent to me that Enterprise was not interested in my continuing employment with Enterprise, I began negotiating my exit from Enterprise.  Under Canadian law, I was entitled to receive a significant severance payment equal to six months' pay.

7.      As part of my departure from Enterprise, I was asked to sign a Noncompetition and Nonsolicitation Agreement and Release (the "Agreement") that would extend my existing non-competition obligations beyond Canada.  During my negotiation of the Agreement, I informed Enterprise that I was exploring a potential General Manager opportunity with Envision and that I would agree to sign the Agreement only if it would permit me to explore and accept future employment as a General Manager for Envision.

8.      The Agreement contains specific language that states I am "authorized to pursue and engage in an opportunity with Envision Motors Management, LLC as an investor and General Manager.  My current employment with Envision is within this exception to my non-

2

competition obligations.  At no time did I inform Enterprise that my role with Envision would not involve any responsibility for management the company's loaner vehicle rental operations.

9.      In March 2022, I contacted Scott Clemmer, General Manager of Enterprise for Southern California, to inform him that Envision was formulating a business plan to expand its existing loaner fleet rental operations offerings to the general public.  The reason for the expansion is to permit Envision to maximize the use of its large loaner car fleet when the loaner cars are not being used to assist Envision's dealership customers.

10.     When I left my employment with Enterprise, I did not take with me any Confidential Information of Enterprise as defined in the Agreement, I have not recreated any such information, nor do I have access to any such information of Enterprise.  In addition, I have not disclosed any Confidential Information of Enterprise to anyone since my employment with Enterprise ended.

11.     The software platforms utilized by Envision are completely different from those utilized by Enterprise.  In addition, I am not operating in the same market for Envision as I had been operating during the last seven years of my employment with Enterprise.

12.     Since my departure from Enterprise, I have not, directly or indirectly, made any attempt to recruit, hire or otherwise induce any employee of Enterprise to leave the employment of Enterprise.

13.     Since my departure from Enterprise, to the best of my knowledge I have not, directly or indirectly, solicited or attempted to induce any customer of Enterprise to terminate, modify or not renew their business relationship with Enterprise.

3

I declare under penalty of perjury of the laws of the State of California, the State of Missouri and the United States of America that the above information is true and correct to the best of my knowledge and belief.

Executed on this 3ᴿᴰ day of April 2022.

_____
STEPHEN BOYD SUMNER

4

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| THE CRAWFORD GROUP, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22SL-CC01953 |
| vs. | ) | |
| | ) | Division No. 1 |
| STEPHEN BOYD SUMNER, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S APPLICATION FOR CHANGE OF JUDGE**

COMES NOW Defendant Stephen Boyd Sumner, appearing by and through undersigned counsel, and requests a change of trial judge pursuant to Missouri Supreme Court Rule 51.05(a). This Application is timely under Rule 51.05(b) as Defendant was served on March 30, 2022.

Respectfully submitted,

*/s/ Melody L. Rayl*
Melody L. Rayl, MO Bar No. 60362
**FISHER & PHILLIPS, LLP**
4900 Main Street, Suite 650
Kansas City, Missouri 64105
Telephone: (816) 842-8770
Facsimile: (816) 842-8767
Email:  mrayl@fisherphillips.com

ATTORNEY FOR DEFENDANT
STEPHEN BOYD SUMNER

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 4, 2022, I filed a true and accurate copy of the above and foregoing document using the Court's electronic filing system which will automatically send notification to the following counsel of record:

Mark S. Deiermann
Jason S. Meyer
Ellen E. Whitehorn
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
Tel: 314.259.2000
Fax: 314.259.2020
Email: msdeiermann@bclplaw.com
Email: jason.meyer@bclplaw.com
Email: ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

*/s/ Melody L Rayl*
Attorney for Defendant
