Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
# STATE OF MISSOURI

| | |
|---|---|
| THE CRAWFORD GROUP, INC. and ENTERPRISE HOLDINGS, INC., | )<br>)<br>) |
| Plaintiffs, | ) Cause No.<br>) |
| v. | ) Division No.<br>)<br>) |
| STEPHEN BOYD SUMNER, | )<br>) |
| Defendant. | )<br>) |

## VERIFIED PETITION FOR INJUNCTIVE AND OTHER RELIEF

COME NOW Plaintiffs The Crawford Group, Inc. ("Crawford") and Enterprise Holdings, Inc. ("EHI," and EHI collectively with its subsidiaries, "Enterprise Holdings"), and for their Verified Petition against Defendant Stephen Boyd Sumner ("Sumner" or "Defendant"), state as follows:

### INTRODUCTION

1. This is an action by Plaintiffs against a former high level executive, Stephen Boyd Sumner, to enforce a Noncompetition and Nonsolicitation Agreement and Release (the "Noncompetition Agreement," a copy of which is attached as Exhibit A hereto and incorporated herein) signed by Sumner in exchange for significant compensation from Enterprise Holdings, and which contains, *inter alia*, covenants not to compete and not to use or disclose confidential Enterprise Holdings information.

2. Enterprise Holdings' businesses include the car rental business. In connection with his resignation from Enterprise Holdings, Sumner informed Enterprise Holdings that he was going to work for Envision Motors Management, LLC ("Envision Motors"), a company engaged in the buying and selling of new and used vehicles as its Vice President/General Manager. With that

understanding, Enterprise Holdings agreed to a limited exception to Sumner's non-compete obligations. Enterprise Holdings never agreed that Sumner could engage in the car rental business; in fact, it was made very clear that he could not do so, and he knew and agreed he could not do so.

3. Enterprise Holdings has recently learned that Envision Motors is expanding into the car rental business. Sumner has stated that Envision Motors has started a division under the name "Exec Rent a Car," and he has acknowledged that he has been involved with the same. Enterprise Holdings has also learned that a new entity, Envision Rent-A-Car, LLC, has been created in order to engage in the car rental business. Sumner has clearly violated his Noncompetition Agreement, which prohibits him from, among other things, being engaged in any business "competitive with any of Enterprise Holding's current business" including but not limited to "automotive, van and truck leasing; [and] automotive, van and truck rental . . . ."

4. As a result, Plaintiffs bring this action seeking the injunctive relief necessary to prevent Sumner from breaching his contractual obligations, as well as damages to compensate Plaintiffs for the damages they have already incurred.

## PARTIES, JURISDICTION AND VENUE

5. The Crawford Group, Inc. is a Missouri corporation with its principal place of business at 600 Corporate Park Dr., St. Louis, Missouri, 63105.

6. Enterprise Holdings, Inc. is a Missouri corporation with its principal place of business at 600 Corporate Park Dr., St. Louis, Missouri, 63105. Enterprise Holdings, Inc. is a wholly-owned subsidiary of The Crawford Group, Inc.

7. Stephen Boyd Sumner is an individual who resides in Coronado, California. At the time he signed his Noncompetition Agreement in connection with his resignation, he resided in and had been working for Enterprise Holdings out of Vancouver, British Columbia, Canada.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

8. This Court has subject matter jurisdiction pursuant to R.S.Mo. § 478.070.

9. The Court has personal jurisdiction over Sumner under Missouri's long arm statute, R.S.Mo. § 506.500, and because Sumner voluntarily submitted to the jurisdiction of this Court under the Noncompetition Agreement. Among other things, Sumner expressly acknowledged that the Noncompetition Agreement "was negotiated and executed in St. Louis County, Missouri"; Sumner traveled to St. Louis County, Missouri for training, meetings, and to conduct other business at Enterprise Holdings' offices; and Sumner represented to Enterprise Holdings in St. Louis County, Missouri that he would be working for Envision Motors in a role that did not include car rentals.

10. Venue is appropriate in St. Louis County under R.S.Mo. § 508.010 because Plaintiffs' principal place of business and registered agent are located in St. Louis County, Missouri, because Plaintiffs have and will suffer injury from Sumner's conduct principally in St. Louis County, and because Sumner voluntarily agreed that venue is proper in this Court under the Noncompetition Agreement. Sumner acknowledged, <u>inter alia</u>, "that he is a sophisticated and knowledgeable businessman, and that he fully and freely bargained for and agreed to the selection of such forum . . . ."

**GENERAL ALLEGATIONS**

**Enterprise and its Business**

11. Enterprise Holdings includes more than 60 operating subsidiaries worldwide. Enterprise Holdings is in the business of (among other things) renting vehicles.

12. Enterprise Holdings' operating subsidiaries, among other things, rent cars under the Alamo Rent-A-Car, Enterprise Rent-A-Car, and National Car Rental brands. These subsidiaries operate under the direction of a General Manager, the functional head of operations for each regional subsidiary and a highly compensated executive. The General Managers are involved in

myriad managerial and strategic decisions, including where and when to open branch locations, which and how many vehicles to operate at the branches, which and how many employees to hire, what hours the branches will operate, and whether and how to expand or contract its business, including by opening new locations or new lines of business, such as car sales or truck rental.

13. The vehicle rental and sale business is a services industry.  It is highly competitive, and a company's competitive advantage is substantially dependent upon its ability to obtain, maintain and protect business and client relationships and goodwill and confidential, competitively-valuable and trade secret information.

14. Enterprise Holdings expends substantial time and effort in developing business relationships and goodwill with its vendors, strategic partners, clients and prospective clients. Enterprise Holdings' clients include many insurance partners, corporate clients as well as retail, leisure renters.  Enterprise Holdings' vendors, strategic partners, and customers are often nationwide and/or worldwide, and not limited to a single region.

15. Enterprise Holdings has also developed and compiled invaluable confidential, competitively-valuable and trade secret information to support its competitive position, including confidential information regarding business strategies (*e.g.*, what markets to target, what customers are most likely to use rental services in those markets, where to locate facilities and market in those markets, etc.); fleet management (*e.g.*, how many vehicles to maintain to optimize utilization, what mix of vehicles to acquire and in what markets, when to acquire, sell, or reduce vehicles in a fleet, etc.); strategic plans regarding, for example, product offerings, marketing, how and when to target certain corporate clients; contacts and contracts with key vendors and strategic partners; proprietary employee training programs and methods; and other similar confidential and competitively-valuable information (collectively, the "Confidential Information").

16. Enterprise Holdings employs individuals such as the Sumner to develop, solidify and enhance its relationships and goodwill with its clients and prospective clients as well as its vendors and strategic partners. Enterprise Holdings also allows its employees to access and use its Confidential Information to act in furtherance of its interests, and Sumner was very familiar with and used such Confidential Information.

### Sumner's Employment with Enterprise

17. Stephen Boyd Sumner began working for Enterprise Holdings in 1996, eventually becoming Vice President/General Manager for Enterprise Rent-a-Car Canada Company in 2017, and working in Vancouver, Canada. As Vice President/General Manager, Sumner was the top executive for the Enterprise Holdings' operating subsidiary in Vancouver and responsible for all aspects of the business there.

18. Sumner worked in other high-level positions for Enterprise Holdings for over ten years, including, among others, Regional Vice President-Rental in Phoenix, Arizona and Regional Vice President in Los Angeles, California.

19. During his employment, Sumner was very well compensated; in the four calendar years prior to his resignation, Sumner averaged more than one million dollars ($1,000,000) in annual compensation.

20. During his employment, Sumner was paid to (among other things) develop, solidify, enhance and expand upon Enterprise Holdings' goodwill for and on behalf of Enterprise Holdings. Enterprise Holdings also paid for business expenses to help develop, maintain, solidify and expand vendor, strategic business partner, and client relationships and goodwill for and on behalf of Enterprise Holdings.

21. During his employment, Sumner was provided significant confidential, competitively-valuable and trade secret information to help him develop, maintain, solidify and expand vendor, strategic partner and customer relationships and goodwill for and on behalf of Enterprise Holdings, and to grow and develop Enterprise Holdings' business. This confidential information included, e.g., business strategies, fleet management analyses, metrics and methodologies; strategic plans regarding product offerings and marketing, contacts and contracts with key vendors and strategic partners, and proprietary employee training programs and methods, as further described above.

22. This information was developed and maintained by Enterprise Holdings and provided to Sumner, including during company calls, meetings, and in-person training programs in St. Louis County, Missouri and other Enterprise Holdings' locations.

### Sumner's Noncompetition Agreement

23. Sumner voluntarily resigned his employment effective August 31, 2021.

24. In connection with his resignation, and to protect Enterprise Holdings' Confidential Information and goodwill, Sumner and Plaintiffs entered into the Noncompetition Agreement (attached as Exhibit A hereto). Under the Noncompetition Agreement, EHI agreed to pay Sumner a very generous sum over a period of five years (*i.e.*, through September 30, 2026) in exchange for, among other things, Sumner's abiding by certain noncompetition and nonsolicitation provisions.

25. Paragraph 4 of the Noncompetition Agreement, titled "Non-Competition," provides that "Sumner shall not, from the date of execution of this Agreement through and including August 31, 2026 [*i.e.*, five years], directly or indirectly, whether as a partner, investor, employee, consultant, owner, creditor, shareholder or otherwise, promote, participate in or engage in any

6

activity, or in any other business, which is competitive with any of Enterprise Holdings' current businesses (as described below) . . . in any city, county, parish, state or province of the United States, Canada or any country where Enterprise Holdings (including any corporation or affiliate or associated business entity included (above) in the definition of "Enterprise Holdings") had existing operations or conducted business as of Separation Date . . . ." Exhibit A, ¶ 4(a).

26. In Paragraph 4(a), Sumner specifically acknowledged "that Enterprise Holdings is engaged in each of the following businesses, among others: automotive, van and truck leasing; automotive, van and truck rental; new or used automotive, van and truck sales; automotive, van and truck fleet management; rideshare and/or vanpool; providing and/or facilitating special services to automotive, van and truck fleet owners, lessors, insurance industry adjustors and/or agents, including, but not limited to, those services provided under the trade name "Enterprise Claims Connection"; any and all ARMS related applications, vanpool services; and automotive, van and truck rental reservation centers." *Id.*

27. Sumner further specifically acknowledged that:

Enterprise Holdings' businesses reach to the full extent of this geographic restriction and it would be impossible to craft a non-competition provision with a narrower geographical limitation that would adequately protect Enterprise Holdings' legitimate interests. Enterprise Holdings does not operate as a traditional "bricks and mortar" business with operations in a limited geographic area. Rather, Enterprise Holdings' business is such that personal long term relationships between a customer and Enterprise Holdings develop through contacts with individual employees and are crucial to the business, and business is primarily conducted by telephone or electronic communications that can be conducted from anywhere.

*Id.*, ¶ 4(b).

28. In Paragraph 4(d) of his Noncompetition Agreement, Sumner agreed that he "**shall immediately** inform and disclose to Enterprise any attempt by any person to involve Sumner, in

any manner, in any activity that is competitive with any business of Enterprise Holdings." *Id.*, ¶ 4(d) (emphasis added).

29. Sumner further agreed to "hold in strictest confidence and not disclose to any person, firm, corporation, partnership or other entity, without the express prior written authorization of Enterprise, any confidential or proprietary information relating to any of the businesses of Enterprise Holdings." *Id.*, ¶ 5. Paragraph 5 defines confidential or proprietary information as including (but not limited to):

> current, previous and planned technical information; intellectual property; business and marketing plans and procedures; new product/service concepts; purchasing agreements; pay; compensation policies and practices; rates; attorney-client communications; strategies; forecasts; customer and/or supplier lists and information; other information concerning the products, services, promotions, development, financing, expansion plans, business policies and practices of Enterprise Holdings; information pertaining to proprietary, technology-based systems, any confidential or proprietary data contained within such systems, and any formulas, processes, or methods embodied by such systems, such as, without limitation, ARMS, ABS, ECARS, EDGE, Odyssey and National Reservations systems; and other forms of information considered by Employer to be confidential, proprietary or in the nature of trade secrets ("Confidential Information") . . . .

*Id.*

30. In Paragraph 5(b) of his Noncompetition Agreement, Sumner acknowledged that:

> [B]y virtue of his employment with Enterprise, he has had and may have substantial access to confidential client, vendor and/or supplier lists and/or confidential customer contacts. Sumner acknowledges that some clients, vendors, suppliers and/or customers have had regular or repeated dealings with Enterprise Holdings which result in systematic or frequent purchases, purchase discounts or other business dealings, such that Enterprise Holdings receives habitual or consecutive business relations with them. Sumner acknowledges that the client, vendor, supplier and/or customer lists and contacts are not matters of public or general knowledge, that such client, vendor, supplier and/or customer lists, and client, vendor, supplier and/or customer contacts have been developed by Enterprise Holdings and maintained by Enterprise Holdings at substantial time and expense, that such client, vendor, supplier and/or customer contacts are extremely valuable to Enterprise Holdings, and that such client, vendor, supplier and/or customer lists and such client, vendor, supplier and/or customer contacts could not be easily replicated. Sumner hereby irrevocably stipulates that the confidential client,

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

vendor, supplier and/or customer contacts and client, vendor, supplier and/or customer lists described in this paragraph, and the Confidential Information, constitute trade secrets for purposes of applicable law.

31. Sumner agreed not to take, disclose, misappropriate, recreate, or misuse any of Enterprise Holding's Confidential Information or trade secrets. *Id.*, ¶ 5(c).

32. Under Paragraph 6 of the Noncompetition Agreement, Sumner agreed that he "shall not, from the date of execution of this Agreement through and including August 31, 2026, directly or through others divert or attempt to divert current or former customers of Enterprise Holdings, to terminate, modify or not renew their business relationship with Enterprise Holdings." *Id.*, ¶ 6(b).

33. Sumner explicitly acknowledged that "the extent of his agreements not to compete with Enterprise Holdings is reasonable in terms of time, scope of activities, and geography, given his status and taking into consideration the substantial economic payments and benefits for him specified in this Agreement, to which Sumner is not otherwise entitled except for this Agreement." *Id.*, ¶ 7(a).

34. Sumner further acknowledged that a breach of his obligations in Paragraphs 4, 5 and 6 of the Noncompetition Agreement "**will** result in irreparable harm for which Enterprise Holdings cannot reasonably or adequately be compensated in damages in an action at law," and that accordingly, "in addition to each and every other remedy provided by law or equity, Enterprise Holdings shall have the right to obtain injunctive relief (including, but not limited to, specific performance, a temporary restraining order and a preliminary, permanent or mandatory injunction), without any requirement to post a bond, against any breach of this Agreement by Sumner." *Id.*, ¶ 7(b) (emphasis added).

**Sumner's Departure from Enterprise and Violation of His Noncompetition Agreement**

35. Effective August 31, 2021, Sumner voluntarily resigned from Enterprise Holdings. He had been with Enterprise Holdings for more than 25 years.

36. In connection with his departure, Sumner negotiated and entered into the Noncompetition Agreement. In exchange for certain restrictive covenants (among other obligations reflected in the Noncompetition Agreement), Enterprise Holdings agreed to pay Sumner, over a five-year period, a significant sum as reflected in Exhibit A. *See* Exhibit A, ¶ 2.

37. Sumner entered into an additional Release agreement with Enterprise Rent-A-Car Canada Company in connection with his resignation. Together the Noncompetition Agreement and Release provide for Sumner to receive more than one million dollars ($1,000,000) from Enterprise Holdings in connection with his departure.

38. At the time of the negotiations, Sumner informed Enterprise that he intended to work for Envision Motors. Sumner represented that Envision Motors was engaged in the business of selling new and used cars, and that he would be its General Manager, overseeing the dealer business (*i.e.*, buying and selling cars). This is consistent with Envision Motors' corporate filings, which identify it as an "Automotive dealership." *See* Exhibit B. Sumner specifically represented that he would not be renting vehicles to retail customers.

39. As reflected in the Noncompetition Agreement, Sumner is prohibited from competing with Enterprise Holdings, including in the business of buying and selling cars. However, based on Sumner's representations that Envision Motors was not also engaged in the rental business and Sumner would not be engaged in the car rental business for Envision Motors, Enterprise Holdings agreed as an exception to his restrictive covenants that Sumner could do this

work for Envision Motors without violating his Noncompetition Agreement. *See* Exhibit A, ¶ 4(a).

40. Sumner further agreed to "immediately inform and disclose to Enterprise any attempt by any person to involve Sumner, in any manner, in any activity that is competitive with any business of Enterprise Holdings." *Id.*, ¶ 4(d).

41. Despite these representations, the clear obligations in his Noncompetition Agreement, and the significant compensation being paid to Sumner (over half of which he has already received pursuant to the terms of the Noncompetition Agreement), Enterprise Holdings has recently learned that Sumner, in his work for Envision Motors, has been planning and assisting in establishing a car rental business that would compete directly with Enterprise Holdings in clear violation of his Noncompetition Agreement.

42. Sumner has been working for Envision Motors to expand Envision Motors' business to include the retail rental market in Southern California as a way to better utilize Envision Motor's loaner fleet. Enterprise Holdings has locations throughout the same region.

43. Among other things, Sumner has hired a manager and assistant manager from Hertz, further evidencing his and Envision Motor's plans to compete in the retail rental business.

44. A new entity called "Envision Rent-a-Car, LLC" ("Envision Rental") was incorporated on November 22, 2021. Envision Rental's sole member is identified as Envision Motors, and its business is stated as "Rental Cars." *See* Exhibit C.

45. Sumner never told Enterprise Holdings before or during the negotiations of the Noncompete Agreement that he and/or Envision Motors had any plans or intentions to expand into the retail rental business.

46. Sumner failed to disclose to Enterprise Holdings that he would be involved in Envision Motors' retail rental business despite his obligation to "immediately inform and disclose" Enterprise Holdings of any attempts by anyone to involve Sumner in any business competitive with Enterprise Holdings.

## COUNT I: BREACH OF CONTRACT

47. Paragraphs 1-46 of this Verified Petition are incorporated by reference as if fully set forth herein.

48. Sumner is bound by the terms of the Noncompetition Agreement, which is valid and enforceable.

49. As described more fully above, pursuant to the Noncompetition Agreement, Sumner agreed to abide by, among others, restrictive covenants not to compete with Enterprise Holdings for five years after his resignation from Enterprise Holdings.

50. Sumner has breached his post-employment obligations, by, at a minimum, (a) failing to inform Enterprise Holdings that Envision Motors was expanding into the car rental business, that Envision Motors involved Sumner in such business, and that Sumner is in fact involved in such business; and (b) engaging in a business directly competitive with Enterprise Holdings, through Envision Motors and/or Envision Rental, in violation of his noncompetition obligations. The full scope and extent of Sumner's breaches are not yet known.

51. The restrictive covenants contained in the Noncompetition Agreement are reasonable, necessary and enforceable to protect Enterprise Holdings' legitimate business interests.

52. Sumner acknowledged in the Noncompetition Agreement that his restrictions are reasonably necessary to protect Enterprise Holdings' interests. *See* Exhibit A, ¶ 7(a).

53. Sumner acknowledged and agreed that a violation of the covenants, promises and agreements described above would result in irreparable harm to Enterprise Holdings and consented to the issuance of an injunction, without any requirement to post a bond, prohibiting conduct in violation of the Noncompetition Agreement. *Id.*, ¶ 7(b).

54. Sumner's breaches of his contractual obligations under his Noncompetition Agreement have caused, are continuing and will continue to cause Enterprise Holdings to suffer irreparable harm and damage, including loss of goodwill and loss of competitive advantage. Monetary damages alone will not fully or adequately compensate Enterprise Holdings.

55. Sumner's breaches of his Noncompetition Agreement have caused, are continuing and will continue to cause Enterprise Holdings to incur substantial monetary damages, including, but not limited to, attorneys' fees and costs, and in the absence of further injunctive relief, will cause substantial loss of income and lost profits.

56. Under Paragraph 9 of the Noncompetition Agreement, Plaintiffs are entitled to recover their costs and reasonable attorneys' fees expended in seeking judicial and equitable relief for Sumner's breaches of the agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendant Stephen Boyd Sumner, and further request that the Court:

A. Temporarily, preliminarily and permanently enjoin, restrain and prohibit Sumner, and all of his agents, servants, representatives, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly:

    1. violating the terms of the Noncompetition Agreement, including by engaging in activities that directly compete with the business of Enterprise Holdings, including by providing any assistance or services to Envision Rent-a-Car, LLC;

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

  2. working for or assisting Envision Motors, which is now a directly competitive company of Enterprise Holdings in the retail car rental business;

  3. using, disclosing, copying, communicating, or distributing any of Plaintiffs' trade secret information or other Confidential Information; and

  4. avoiding or attempting to avoid providing discovery in this litigation by purging, destroying, altering, modifying or concealing any of Plaintiffs' trade secret or other Confidential Information, whether in original, copied, computerized, handwritten or any other form;

 B. Enter an order requiring Sumner to immediately return to Plaintiffs any and all documents containing any trade secret or other Confidential Information of Plaintiffs or pertaining to Plaintiffs' business, regardless of the form or medium in which it/they is/are stored or preserved (including, but not limited to, on a computer, thumb drive, flash drive, DVD or CD, "smart" phone, iPad, etc.), and whether in original, copied, computerized, handwritten or any other form;

 C. Award Plaintiffs damages under the Noncompetition Agreement in accordance with its terms and as are fair, reasonable, and recoverable under applicable law based upon the evidence adduced at trial, including without limitation, compensatory damages, plus interest, fees, and costs;

 D. Award Plaintiffs such other and further relief as this Court deems just and proper.

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

Dated: March 30, 2022

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ *Mark S. Deiermann*
    Mark S. Deiermann, #31521
    Jason S. Meyer, #64030
    Ellen E. Whitehorn, #71226
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    Telephone: (314) 259-2000
    Facsimile: (314) 259-2020
    msdeiermann@bclplaw.com
    jason.meyer@bclplaw.com
    ellen.whitehorn@bclplaw.com

ATTORNEYS FOR PLAINTIFFS

Electronically Filed - St Louis County - March 30, 2022 - 12:19 PM

## VERIFICATION

I, William Withington, being of lawful age, hereby declare under penalty of perjury, as follows:

1. I am Senior Vice President of Enterprise Holdings, Inc.

2. The facts alleged in the Verified Petition are based on matters known personally to me and/or on information provided to me by others within Enterprise Holdings, Inc., and are true and correct to the best of my knowledge, information and belief.

_____
NAME

3/29/22
_____
DATE